### KIMBALL v. E. A. ROSENHAM CO.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1902.)

#### No. 1,615.

1. BANKRUPTCY—PAYMENTS ON ACCOUNT CURRENT NO PREFERENCE WHERE SUBSEQUENT CREDITS EXCEED THEM.

The receipt by a creditor of payments upon an account current in the usual course of business, which are followed by new credits for property delivered to the debtor which becomes a part of his estate, for which the creditor is not paid, and which equals or exceeds in amount and value the payments, does not constitute a preference, under section 60a, and does not require the creditor to surrender such payments as a condition of the allowance of his claim. under section 57g, of the bankrupt act of 1898.

2. SAME—CREDITOR'S CLAIM ON ACCOUNT CURRENT NOT DIVISIBLE.

The claim of a creditor for a balance due upon an account current with the bankrupt is one single claim, and, in determining its allowance and the existence of alleged preferences arising out of the acts it evidences, it must be so considered. It may not be divided into its items or into separate claims for that purpose.

(Syllabus by the Court.)

Appeal from the District Court of the United States for the Eastern District of Arkansas.

Eben W. Kimball, for appellant.
E. B. Kinsworthy, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. The E. A. Rosenham Company, a corporation, sold and delivered merchandise to the Max Elkan Company, another corporation, from time to time, on credit, in the usual course of business, and the Elkan Company paid the Rosenham Company, on account at different times, sums which aggregated $850. Of this sum payments amounting to $550 were made within four months of the date of the order which adjudged the Elkan Company a bankrupt, and payments to the amount of $300 were made more than four months before that adjudication. Some of the credits for the goods sold were evidenced by acceptances of the Elkan Company and others by the usual book account. When the Elkan Company was adjudged a bankrupt, it was indebted to the Rosenham Company in the sum of $3,384.13 on account of the goods which its creditor had sold to it on credit. $1,878.13 of this amount was owing by it when it paid the $850, and $1,506 of the amount consisted of new credits which the Rosenham Company had extended to it for goods actually sold to it, and which became a part of its estate after all the payments were made, and on account of which nothing has ever been paid to the creditor. In this state of the case, the Rosenham Company proved and asked the allowance of its claim of $3,384.13 against the estate of the bankrupt. It was met by the objection of the trustee that its claim should not be allowed unless it first surrendered, under section 57g of the bankrupt act, the alleged preference it received by its acceptance of the $850 which the debtor had paid or some of the acceptances it had given for some of the goods. The order of the district court was that the part of the claim of the creditor which arose out of the $1,506 of new credits which were extended after the $850 was paid should be allowed without the return of the money thus paid, but that the portion of its claim which was based on the amount owing before the $850 was paid should not be allowed unless the creditor paid the $850 back to the trustee. The trustee has appealed from this order, and he assigns as error the allowance of the portion of the creditor's claim founded on the new credits without requiring the surrender of the $850.

The order is erroneous, but not for the reason alleged by the appellant. The portions of the bankrupt act pertinent to this inquiry are:

"Sec. 57g. The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences."

"Sec. 60a. A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

The term "transfer" in the last section includes a payment. This section gives the legal and controlling definition of the preference mentioned in section 57g and other parts of the bankrupt act. It declares that it is not every transfer of property or payment of money that will constitute a preference, but such transfers or payments only as enable the creditors receiving them to obtain greater percentages of their debts than other creditors of the same class. Is a creditor who, subsequent to the receipt of payment on an account current, extends to his debtor new credits in excess of the amount of the payments for merchandise which actually becomes a part of the debtor's estate, thereby "enabled to obtain a greater percentage of his debt" than other creditors of the same class? Take the case in hand. Before the $850 was paid the creditor had a claim for $1,878.13 still owing for goods sold before that time, and $850 more, in all $2,728.13. After the payments were made it extended new credits, and put into the estate of the debtor new goods, which amounted to $1,506, on account of which it has received nothing. Hence at the time of the adjudication in bankruptcy its claim was $3,384.13, while it was only $2,728.13 before the payments were made. The result is that by virtue of the payments and the subsequent credits the estate of the bankrupt has been increased to the amount of $656, the claim of the creditor has been enhanced by the same amount, and its loss in a proportionate sum. It has received no benefit, but, on the other hand, has incurred a positive loss by the transaction. If it had received no payments and extended no credits subsequent to the time of the payment, it would have lost that portion of $2,728.13 which will not be paid by the estate of the bankrupt, while it will now lose that portion of $3,384.13 which that estate will not pay. On the other hand, the other creditors receive their proportionate share of $656 more than they would have received if the payments had never been made and the new credits had never been extended because the estate of the bankrupt has goods of the Rosenham Company of the value of $656 more than it would have had in that event.

It may be said that before the $850 was paid the claim of the Rosenham Company was $2,728.13, that after its payment it was only $1,878.-13, and that the moment the payment was made the creditor had secured thereby a preference. This would undoubtedly have been true if the account and the transaction had closed there. But it did not, and it is the actual account and the real transaction, and not those which might have been, but were not, that condition this case and its decision. It was not the purpose or the intention of the parties to this transaction to give the creditor a preference by the payment of this $850, and that payment never had that effect. Parties are presumed to intend the ordinary and natural consequences of their acts. The customary and natural effect of payments upon a live account current is the continuance of the account and the extension of new credits. Stop payments upon such an account, and new credits are not extended, and the account closes. Make payments, and the account continues and further credit is given. The payments upon the old credits constitute the inducement for the extension of new credits, without which those credits would not be made. If the $850 had not been paid

to the Rosenham Company on the then existing debt of $2,728.13, it is improbable that that corporation would have extended to its debtor the subsequent credits of $1,506 on account of which it has received no payments. These motives, purposes, and practices of parties to mutual running accounts are common knowledge, and courts cannot and ought not to be blind to them. The bankrupt act should be read and construed, and the transactions of the parties affected by it should be judged in the light of them.

If at the time when this debtor paid the $850 on the old credits it had bought goods of the value of $1,506 of its creditor, and had paid $850 therefor, leaving a balance of $656 owing for them, no one would have claimed that it had thereby given a preference. No more did the payment of the $850 on the old credits which induced the new credits of $1,506. The actual effects of the two transactions upon the claim of the creditor, upon the estate of the bankrupt, and upon the claims of the other creditors would have been identical, and their legal effects could not be different. In neither the partial payment which induces the supposed sale and immediate delivery of goods nor in the payment upon the old credits which induces new sales upon credit in excess of its amount is "the effect of the enforcement of" the payment "to enable" the creditor, in the words of the law, "to obtain a greater percentage of his debt than other of such creditors of the same class." In both the loss is the creditor's and the gain is the estate's. Nor can the payment of the money on the old credits which induces the new credits be either justly or lawfully segregated from the new credits it induces for the purpose of finding a preference that never in fact existed, and never was intended, any more than the partial payment for goods when bought can be segregated from that sale for such a purpose. The payments and the new credits they induce are parts of the same transaction, inseparable in the intent of the parties and in their actual and legal effect. The items of an account current do not constitute separate claims of the creditor who presents them in a court of bankruptcy. They constitute one single claim. They cannot be lawfully separated and adjudicated without considering their mutual interdependence and relation. Nor can the claim they constitute be legally divided into claims, and a lawful adjudication of these claims be made as though they were not affected by each other. The entire account is not only one single claim, but it is one single continuing transaction, and in determining the existence of the alleged preferences and allowing its proof it must be so considered. In re Richter's Estate, 20 Fed. Cas. 749,752 (No. 11,803); In re Dickson, 49 C. C. A. 574, 111 Fed. 726, 728. If, when the claim is thus considered, the payments made, and the new credits which follow them, decrease the amount owing upon the claim, they may constitute a preference to the creditor; but if they increase it, or leave it unaffected, it is impossible for them to work such a "preference" in his favor, within the true meaning of that term in the bankrupt law. Our conclusion is that the receipt by a creditor of payments upon an account current, in the usual course of business, which are followed by new credits for property delivered to the debtor, which becomes a part of his estate, for which the creditor has not been paid, and·

which equals or exceeds in amount and value the payments, does not constitute a preference, under section 60a, and does not require the creditor to surrender such payments as a condition of the allowance of his claim, under section 57g of the bankrupt act of 1898.

The order below must accordingly be reversed, the appellant must pay the costs, the case must be remanded to the district court, with instructions to allow the claim of the appellee, without requiring it to surrender any of the payments it has received; and it is so ordered.