## C. S. MOREY MERCANTILE CO. v. SCHIFFER.

(Circuit Court of Appeals. Eighth Circuit. March 24, 1902.)

### No. 1,611.

1. BANKRUPTCY—PAYMENTS ON ACCOUNT CURRENT—PREFERENCES.

The receipt by a creditor of payments upon an account current in the usual course of business, which are followed by new credits for property delivered to the debtor, which becomes a part of his estate, for which the creditor is not paid, and which equals or exceeds in amount and value the payments, does not constitute a preference, under section 60a, and does not require the creditor to surrender such payments, as a condition of the allowance of his claim, under section 57g of the bankrupt act of 1898.

2. SAME—CREDITOR'S CLAIM ON ACCOUNT CURRENT NOT DIVISIBLE.

The claim of a creditor for a balance due upon an account current with the bankrupt is one single claim, and in determining its allowance, and the existence of alleged preferences arising out of the acts it evidences, it must be so considered. It may not be divided into its items or into separate claims for that purpose.

3. SAME—SURRENDER OF PREFERENCES—NEW CREDITS.

A creditor who comes within the provisions of section 60c of the bankrupt act may set off the amount of his new credits therein mentioned against the amount he would otherwise be required by section 57g to surrender before proving his claim, although he did not have reasonable cause to believe that the transfer of the property to him was intended as a preference, and although the property so transferred is not recoverable by the trustee under section 60b.

(Syllabus by the Court.)

Appeal from the District Court of the United States for the District of Colorado.

W. Scott Bicksler, Lester McLean, and Edmon G. Bennett, for appellant.

George A. H. Fraser, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. Walter F. Pierce was a merchant engaged in conducting a retail business in Colorado. The C. S. Morey Mercantile Company was engaged in the business of selling groceries

at wholesale, and it sold and delivered to Pierce small amounts of groceries, on a credit of 60 days, for some months before he was, on January 21, 1901, adjudged a bankrupt. There was owing upon this account between $300 and $400 on September 23, 1900. Between that day and October 2, 1900, Pierce paid the mercantile company $221.26 on account. After these payments were made, and before Pierce was adjudged a bankrupt, the mercantile company sold and delivered to him, upon a credit of 60 days, goods of the value of $444.03, which became a part of his estate. At the close of the transactions between them there remained due from Pierce to the mercantile company the sum of $550.23. The court below ordered the disallowance of this claim unless the creditor should surrender to the trustee the $220.63 which it had received upon its account within four months of the adjudication in bankruptcy. This is the order challenged by this appeal.

This order is based on section 57g of the bankrupt act, which reads:

"The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences."

But there are two reasons why the order in question is not warranted by this section. Section 60a reads:

"A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

The payment of money is the transfer of property, within the meaning of this section. But it is only a payment or transfer the enforcement of which will enable one creditor to obtain a greater percentage of his debt than any other creditor of the same class that constitutes a preference. Before the enforcement of the payment of the $220.63 which this creditor received about October 1, 1901, can be held to create a preference in his favor, it must appear in some way that this payment enabled it to obtain a greater percentage of its debt than any other creditor of its class. The facts of this case disclose nothing of this kind. The amount owing by the debtor just before these payments were made was less than $400. When the account subsequently closed, it was $550.23. The payment of the $220.63 was followed by the sale and delivery of goods to the debtor of the value of $444.03, on account of which nothing has ever been paid. The net result, therefore, of the payments, and the subsequent sales of the goods upon credit, was that the estate of the bankrupt was increased $223.40, and the amount owing to the creditor was increased by the same amount. How, then, can it be said that the enforcement of these payments enabled this creditor to obtain a greater percentage of his debt than any other creditor of his class? Courts cannot be, and ought not to be, blind to the habits, practices, and motives of business men, which are a part of the common knowledge of mankind. Payments upon current account constitute the inducement for further sales and credits. Let them be refused,

and the sale and delivery of goods cease. It was doubtless the payment of this $220.63 in September and October, 1900, that induced this creditor to make its subsequent sales, and to increase the indebtedness of Pierce to it $223.40 above its amount before the payments were made. The enforcement of such payments does not enable the creditors who receive them to obtain greater percentages of their debts than any other creditors of the same class. It has the opposite effect. It decreases their percentages by as much as the goods sold after the payments exceed the payments, and it increases the percentages of the other creditors correspondingly. The items of debit and credit upon a running account, where goods sold are charged, and payments are credited, are not separate claims. They constitute a single claim. When it is asserted that payments made upon such a claim, followed by goods subsequently delivered on credit, for which no payment has been made, constitute preferences of the creditor, the question is whether the net result of those payments and of the subsequent credits has been an increase or a diminution of the claim. If, taken together, they decrease the claim, their enforcement effects a preference. If, taken together, they increase the claim, they work no preference of the creditor who has received them, but confer a benefit upon the other creditors who share in the estate of the bankrupt, because that estate is increased by the excess of the value of the goods subsequently sold above the payments made. The circuit court of appeals of the First circuit, in treating this subject, well says:

"It is beyond all reason to hold, because a creditor has, in the ordinary course of business, during the four months preceding bankruptcy, received payments which under some circumstances might operate as a preference, in some views of the law, that that fact can be held to bar the proof of his claim, when, looking at all the transactions together, they demonstrate not only that they were without any intention to acquire any unjust preference, but also that they have increased the net indebtedness to the creditor, and correspondingly increased the bankrupt's estate. In order to avoid so unreasonable a result, we might say that all the transactions covered by the account current should be regarded as one, so that it could not be held that the effect of the payments was to enable the creditors at bar to obtain a greater percentage of their debt than any other creditor of the same class, within the meaning of paragraph 'a' of section 60." In re Dickson, 49 C. C. A. 574, 111 Fed. 726, 728.

The result is that the payments challenged in this case worked no preference, because the net result of these payments and the subsequent sales of goods on credit to the debtor increased, and did not diminish, the claim, so that their effect was not to enable the mercantile company to obtain a greater percentage than any other creditor of its class, but it was to increase the percentage of every other creditor. The receipt by a creditor of payments upon an account current in the usual course of business, which are followed by new credits for property delivered to the debtor which becomes a part of his estate, for which the creditor is not paid and which equals or exceeds in amount and value the payments, does not constitute a preference, under section 60a, and does not require the creditor to surrender such payments as a condition of the allowance of his claim under section 57g of the bankrupt act of 1898. Kimball v. A. E.

114 F.—29

Rosenham Co., 114 Fed. 85; In re Richter's Estate, 20 Fed. Cas. 749, 752 (No. 11,803); In re Dickson, 49 C. C. A. 574, 111 Fed. 726, 728; Peterson v. Nash (C. C. A.) 112 Fed. 311, 314.

In the second place, if the payment of the $220.63 had worked a preference, this creditor would have been entitled to set off against it the amount of the new credit subsequently given, under section 60c of the bankrupt law of 1898. That section reads:

"If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

It is contended that this section authorizes these new credits to be set off only against amounts which might be recovered by the trustee from creditors who have knowingly received preferences in the way described in section 60, subd. "b." The question presented by this contention has been the subject of much debate. All the reasons for and against it have been repeatedly stated by the various courts, and it would be a work of supererogation to repeat or review them, here. The arguments in support of the position of counsel for the trustee will be found in Re Christensen (D. C.) 101 Fed. 243; Re Arndt (D. C.) 104 Fed. 234; Re Abraham Steers Lumber Co. (D. C.) 110 Fed. 738, 743. The reasons why, in our opinion, this contention cannot be and ought not to be sustained, have been presented in Peterson v. Nash (C. C. A.) 112 Fed. 311; McKey v. Lee, 45 C. C. A. 127, 105 Fed. 923; Re Dickson, 49 C. C. A. 574, 111 Fed. 726; Re Ryan (D. C.) 105 Fed. 760; Re Seckler (D. C.) 106 Fed. 484; and Re Southern Overalls Mfg. Co. (D. C.) 111 Fed. 518.

Since the decision in Peterson v. Nash, our attention has been called to the following remark contained in the opinion of the supreme court in Pirie v. Trust Co., 182 U. S. 455, 21 Sup. Ct. 906, 45 L. Ed. 1171:

"Nor, again, do we find anything which militates against our conclusion in subdivision 'c' of section 60. That subdivision is applicable to the cases arising under 'b,' and allows a set-off which otherwise might not be allowed."

But there are at least two reasons why this remark is neither controlling nor persuasive: In the first place, the question whether or not the set-off provided for by subdivision "c" might be allowed to creditors who had innocently obtained preferences, as well as to those who had done so with intent to evade the provisions of the bankrupt act, was not in issue in that case, and was not decided; and, in the second place, there is nothing in this remark inconsistent with the view that offsets against such preferences may be allowed. It merely states that subdivision "c" is applicable to cases arising under subdivision "b." No one disputes that proposition.

After a careful consideration of the authorities, and the arguments which they so forcibly present upon each side of the question now under consideration, this court, at its last term, arrived at the conclusion that section 60c entitles an innocent creditor who comes within its provisions to set off the amount of his new credits against

the amount he would otherwise be required by section 57g to surrender before proving his claim, and that it is not limited in its application to cases where the trustee may sue to avoid the preferences under section 60b. Peterson v. Nash (C. C. A.) 112 Fed. 311. The circuit courts of appeals of the First and Seventh circuits have arrived at the same conclusion. McKey v. Lee, 45 C. C. A. 127, 105 Fed. 923; In re Dickson, 49 C. C. A. 574, 111 Fed. 726. A thoughtful reconsideration of this question at this term in the light of subsequent decisions, and of the remark of the supreme court to which reference has been made, has served but to confirm us in the righteousness and soundness of that conclusion. The result is that the order below must be reversed, and the case must be remanded to the district court, with directions to allow the claim of the appellant, without the repayment of any of the moneys it has received.