# JAQUITH *v.* ALDEN.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 516. Submitted January 12, 1903.—Decided April 27, 1903.

Payments on a running account, in the usual course of business, by a person whose property had actually become insufficient to pay his debts, where new sales succeeded payments and the net result was to increase his estate, and the seller had no knowledge or notice of the insolvency and no reason to believe an intention to prefer, are not preferences, which must be surrendered as a condition to the allowance of proof of claim, under the bankruptcy act of 1898.

*Pirie* v. *Chicago Title and Trust Company*, 182 U. S. 438, in which the decision proceeded on the finding of facts made pursuant to clause 3 of General Orders in Bankruptcy, XXXVI, distinguished.

F. N. WOODWARD *et al.* filed their petition in bankruptcy and were adjudicated bankrupts November 26, 1901. They had become insolvent August 15, and on that day were not indebted to G. Edwin Alden, who, afterwards, in ignorance of the insolvency, made sales to Woodward *et al.* and received payments from them therefor in the regular course of business,

and without any idea or intention on the part of Alden of obtaining a preference thereby, the sales and payments being as follows:

" *Sales.*

" Aug. 17, 1901. Rubber . . . . . . . . . . . $289 46
  28, " " . . . . . . . . . . . . 657 89
Sept. 30, " " . . . . . . . . . . . 644 28
Oct. 18, " " . . . . . . . . . . . 535 99
Oct. 18, " Cartage . . . . . . . . . . 50
  31, " Asbestine . . . . . . . . . . 10 40

" *Payments.*

" Sept. 4, 1901. Payment of bill Aug. 17 . . . $289 46
  28, " " " " 28 . . . 657 89
Oct. 29, " " " " Sept. 30 . . . 644 28 "

The merchandise sold Woodward *et al.* was manufactured by them, and the result of the transactions was to increase their estate in value. Alden petitioned to be allowed to prove his claim of $546.89.

The referee disallowed the claim unless at least the amount of $633.88 was surrendered to the estate. The District Judge reversed the judgment of the referee and allowed the claim, and the decree of the District Court was affirmed by the Circuit Court of Appeals, 118 Fed. Rep. 270, on the authority of *Dickson* v. *Wyman*, 111 Fed. Rep. 726. Thereupon an appeal to this court was allowed and a certificate granted under section 25, *b*, 2.

. *Mr. H. J. Jaquith,* appellant, *pro se.*

*Mr. Eugene M. Johnson, Mr. Arthur T. Johnson* and *Mr. Alonzo R. Weed* for appellee.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The facts found established that on August 15 the aggregate

of the property of the bankrupts was not, at a fair valuation, sufficient in amount to pay their debts, but that Alden was ignorant of this, and in good faith and in the regular course of business sold material to the bankrupts, and received payment therefor, several times between August 15 and November 26, when the petition was filed, on which day the amount of $546.89 for material delivered shortly before had not been paid. All the material so sold to them was manufactured by the bankrupts and increased their estate in value.

The question is whether the payments made to Alden (or either of them) were preferences within section 60 of the bankruptcy act of 1898, which must be surrendered under section 57g, before his claim could be allowed.

Provisions of the act bearing on the subject are given below.[1]

---

[1] "SECTION 1a. The words and phrases used in this act and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows: . . . (9) 'creditor' shall include any one who owns a demand or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy; (10) 'date of bankruptcy,' or 'time of bankruptcy,' or 'commencement of proceedings,' or 'bankruptcy,' with reference to time, shall mean the date when the petition was filed; (11) 'debt' shall include any debt, demand, or claim provable in 'bankruptcy'; . . . (15) a person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

"SEC. 3a. Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay, or defraud his creditors, or any of them; or (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; or (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference; or (4) made a general assignment for the benefit of his creditors; or (5) admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground."

"SEC. 60a. A person shall be deemed to have given a preference if, being

In *Pirie* v. *Chicago Title & Trust Company,* 182 U. S. 438, the Circuit Court of Appeals for the Seventh Circuit had affirmed an order of the District Court for the Northern District of Illinois, rejecting a claim of Carson, Pirie and Company against the estate of Frank Brothers, bankrupts, and the case was then brought to this court on findings of fact and conclusions of law of the Circuit Court of Appeals made and filed " pursuant to the requirements of subdivision 3, Rule 36 of General Orders in Bankruptcy." The three first of the findings were as follows :

" First. That on February 11, 1899, August Frank, Joseph Frank and Louis Frank, trading as Frank Brothers, were duly adjudged bankrupts.

" Second. That for a long time prior thereto appellants carried on dealings with the said bankrupt firm, said dealings consisting of a sale by said appellants to said Frank Brothers of goods, wares and merchandise amounting to the total sum of $4403.77.

" Third. That said appellants in the regular and ordinary

---

insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

" *b.* If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person.

" *c.* If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estates, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

" Sec. 57*g.* The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences."

" Sec. 68*a.* In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

course of business, and within four months prior to the adjudication in bankruptcy herein, did collect and receive from said bankrupts as partial payment of said account for such goods, wares and merchandise so sold and delivered to said Frank Brothers, the sum of $1336.79, leaving a balance due, owing and unpaid, amounting to $3093.98."

It was further found that at the time this payment was made Frank Brothers were hopelessly insolvent to their knowledge ; but that Carson, Pirie and Company had no knowledge of such insolvency nor had reasonable cause to believe that it existed, nor did they have reasonable cause to believe that the bankrupts by the payment intended thereby to give a preference ; and that they had refused to surrender to the trustee the amount of the payment made to them by the bankrupts as a condition of the allowance of their claim. Upon the facts the Circuit Court of Appeals concluded as matter of law that the payment made "at the time and in the manner above shown," constituted a preference, and that by reason of the failure and refusal of Carson, Pirie and Company to surrender the preference they were not entitled to prove their claim.

The judgment below was affirmed by this court, and it was held that a payment of money was a transfer of property, and when made on an antecedent debt by an insolvent was a preference within section 60a, although the creditor was ignorant of the insolvency and had no reasonable cause to believe that a preference was intended. The estate of the insolvent, as it existed at the date of the insolvency, was diminished by the payment, and the creditor who received it was enabled to obtain a greater percentage of his debt than any other of the creditors of the same class.

In the present case all the rubber was sold and delivered after the bankrupts' property had actually become insufficient to pay their debts, and their estate was increased in value thereby to an amount in excess of the payments made. The account was a running account, and the effect of the payments was to keep it alive by the extension of new credits, with the net result of a gain to the estate of $546.89, and a loss to the seller of that amount less such dividends as the estate might

pay. In these circumstances the payments were no more preferences than if the purchases had been for cash, and, as parts of one continuous *bona fide* transaction, the law does not demand the segregation of the purchases into independent items so as to create distinct preëxisting debts, thereby putting the seller in the same class as creditors already so situated, and impressing payments with the character of the acquisition of a greater percentage of a total indebtedness thus made up.

We do not think the slight variation in the dates of sales and payments affords sufficient ground for the distinction put forward by counsel between the payments of September 4 and 28 and the payment of October 29 (which he concedes should be upheld) in their relation to the rubber furnished August 17 and 28 and September 30. All the material was sold and delivered after August 15, and neither of the items can properly be singled out as constituting outstanding indebtedness, payment of which operated as a preference.

The facts as found in *Pirie* v. *Trust Company* were so entirely different from those existing here that this case is not controlled by that. In view of similar vital differences it has been held by the Circuit Court of Appeals for the First Circuit, *Dickson* v. *Wyman*, 111 Fed. Rep. 726; Second Circuit, *In re Sagor and Brother*, 9 Am. Bank. Rep. 361; Third Circuit, *Gans* v. *Ellison*, 114 Fed. Rep. 734; Eighth Circuit, *Kimball* v. *Rosenham Company*, 114 Fed. Rep. 85, that payments on a running account, where new sales succeed payments and the net result is to increase the value of the estate, do not constitute preferential transfers under section 60*a*.

*Judgment affirmed.*

MR. JUSTICE WHITE and MR. JUSTICE McKENNA, not being able to concur in the reasons by which the court in the opinion just announced distinguishes this case from that of *Pirie* v. *Chicago Title & Trust Co.*, and deeming the latter case controlling in this, dissent.