In re FRED STERN & CO., Inc.

FEDERAL INTERNATIONAL BANKING CO. v. CHILDS.

No. 89.

Circuit Court of Appeals, Second Circuit.
Dec. 14, 1931.

Zalkin & Cohen, of New York City (Nathan Coplan, of New York City, of counsel), for trustee.

Martin Conboy, of New York City (David Asch, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

Fred Stern & Co., Inc., a business corporation engaged in importing and selling rubber, was adjudicated a bankrupt on January 21, 1925. The appellee, a banking corporation, filed a claim for $234,664, which arises from advances of money made during the year 1924. This was pursuant to an agreement between the bankrupt and the appellee, made in the latter part of 1923, by which appellee established a revolving credit in favor of the bankrupt for $250,000. Unknown to the appellee, Fred Stern & Co., Inc., at this time was insolvent. However, the bankrupt availed itself of this credit from time to time, almost to the full amount, and, when the pe-

tition in bankruptcy was filed, it owed appellee about $240,000. On December 31, 1923, appellee was furnished by the bankrupt with its statement showing an excess of assets over liabilities of $1,001,000. Nothing in the record denies the proclaimed lack of knowledge on the part of the appellee as to this financial condition. Appellee advanced up to the full amount of the credit shortly after March, 1924, and this continued until the bankruptcy by various advances and payments under the following arrangement:

When the bankrupt wished to utilize funds maturing on a date, it sent the appellee an acceptance draft covering the amount several days in advance of the date of maturity, and at the same time referred to the collateral pledged against the loan. Upon receipt of advice by the appellee from its New York bank that the amount which was maturing had been paid, the appellee wired its bank correspondent to pay the bankrupt the proceeds of the new acceptances. The drafts were sent to the appellee with a statement that the bankrupt expected to take up the maturing acceptance on a certain date, and in order to use the open line of credit was inclosing a new draft or drafts for substantially the same amount, and that the inclosed draft covered a certain amount of rubber sold to a named purchaser. In this manner, each time the bankrupt made a payment to appellee, the latter paid back to the bankrupt about the same amount. When the appellee's bank correspondent made a payment to the bankrupt, as a condition of so doing, it obtained a trust receipt purporting to cover the rubber specified in the preceding letter from the bankrupt to the appellee. It is established that the appellee regarded these trust receipts as issued in good faith, believing that they covered actual rubber shipments, and states that it would not have made the advance if it had known that there was no actual security given, as was the fact.

The trustee's objection is made against claims which were not secured by valid trust receipts. The trustee also argues that there is a distinction between all items which were paid and the last one. This last item was part of the same series of transactions and consisted of the payment by the bankrupt of $19,488, on December 27, 1924, for a maturing draft. Three days prior thereto, the appellee advanced to the bankrupt $19,040 in connection with, and in pursuance of, this revolving credit agreement, and it was upon assurance that the $19,488 would be paid when due. The distinction sought to be drawn between this last item and all the others is the

fact that the advance to the bankrupt had been made a few days before the bankrupt's payment to the appellee. All the advances made by the appellee enriched the bankrupt's estate to the extent of $240,000. At no time during the four months' period preceding bankruptcy did the bankrupt owe appellee more than the amount due on April 19, 1924, except for a few days when it arose to $261,766, which was due to an advance payment concerning which it is not claimed there was a preference.

But it is claimed by the trustee that the bankrupt preferred the appellee to the extent of $360,998.40 by payments during 1924, and it was argued that, as a condition of sharing in the dividends to be paid by the estate, this sum must first be paid. The argument is that the transactions are null and void under section 15 of the New York Stock Corporation Law (Consol. Laws, c. 59). Appellant says we are not concerned with a preference under the Bankruptcy Act, § 57g (11 USCA § 93(g). Section 15 provides:

"No corporation which shall have refused to pay any of its notes or other obligations, when due, * * * shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * * Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders or other trustees. * * * No such conveyance, assignment or transfer shall be void in the hands of a purchaser for a valuable consideration without notice. * * * "

Under this act, there are two essentials to be established to constitute a violation: First, that the debtor corporation must have been at the time of the transfer insolvent, or its insolvency must have been imminent; and, second, the transfer must have been made with an intent by the debtor to give a preference. Grandison v. Robertson, 231 F. 785 (C. C. A. 2); Kolkman v. Mfgs. Trust Co., 27 F.

(2d) 659 (C. C. A. 2); Arbury v. Kocher (D. C.) 18 F.(2d) 588. The payments were made by the bankrupt in the ordinary course of the bankrupt's business, and were such as might have been made by it if solvent. The payments were not made in contemplation of insolvency or winding up as an impending fact, but apparently with the expectation of continuing the business. Cardozo v. Brooklyn Trust Co., 228 F. 333 (C. C. A. 2); Kárasik v. People's Trust Co. (D. C.) 252 F. 324. With the action of the bankrupt reasonably susceptible to such a construction rather than to a wrongful act, we should ascribe such an intent rather than an intent to prefer this creditor. Lopez v. Campbell, 163 N. Y. 340, 57 N. E. 501; Dutcher v. Importers' & Traders' Nat'l Bank, 59 N. Y. 5. In the Dutcher Case (decided in 1874) it was well said: "A payment made with a view of giving a preference to a particular creditor is one rarely if ever made in the usual course of business. In such a case the creditor will usually be sought out by the debtor and payment made by an unusual transfer of assets. * * * " And section 15 of the Stock Corporation Law does not prohibit the directors of a corporation from paying or securing a debt of the corporation. Gordon v. Southgate Building Co., 109 App. Div. 838, 96 N. Y. S. 717.

The Bankruptcy Act defines a preference as a transfer by an insolvent, the effect of which will be to "enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." Section 60a (11 USCA 96(a). The Stock Corporation Law refers to a "preference to any particular creditor over other creditors of the corporation." In order to constitute a transfer prohibited by section 15 of the Stock Corporation Law as a preference, there must be an actual depletion of the estate. The same holds true to constitute a preference in the estate of a bankrupt. The purpose of the state act is directed primarily to the conservation of the estate of the insolvent for the benefit of its creditors, and, where a transfer has not resulted in a reduction or depletion of these assets to which the creditors are entitled to look for payment of their debts, no preference has taken place. Continental & Commercial Trust & Savings Bank v. Chicago Title & Trust Co., 229 U. S. 435, 33 S. Ct. 829, 57 L. Ed. 1268; N. Y. County Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380; Nat'l Bank of Newport v. Nat'l Herkimer County Bank, 225 U. S. 178, 32 S. Ct. 633, 56 L. Ed. 1042. At bar there is no depletion of the bankrupt's estate; the payments were made in connection with a series of transactions involving an extended credit, and the net result as above stated did not operate to decrease the obligation of the debtor as existing on the date of insolvency.

It is unjust to hold that, because the appellee has in the ordinary course of business during the four months preceding bankruptcy received payments which, under similar circumstances, might operate as a preference in some views of the law, it will bar the proof of this claim when, looking at all the transactions together, they demonstrate they were without any intention to acquire or to give any unjust preferences, and particularly where they have increased the net indebtedness to the creditor and effected a corresponding increase of the bankrupt's estate. In re Dickson, 111 F. 726 (C. C. A. 1). In order to avoid such an unreasonable result, it is proper to hold that all the transactions covered by this account will be regarded as one, so that it may not be held that the effect of any of the payments was to enable the appellee to obtain a greater percentage of its debt than any other creditor of the same class, within the meaning of the Bankruptcy Act, or that it is a preference within the meaning of section 15 of the Stock Corporation Law. Jos. Wild & Co. v. Provident Life & Trust Co., 214 U. S. 292, 29 S. Ct. 619, 53 L. Ed. 1003; Jaquith v. Alden, 189 U. S. 78, 23 S. Ct. 649, 47 L. Ed. 717; C. S. Morey Mercantile Co. v. Schiffer, 114 F. 447 (C. C. A. 8). In the Wild Case, the court made clear that a last payment made in the ordinary course of business should not be segregated and declared a preference. The test in determining the absence or existence of a preference is whether or not the entire course of dealings on the open account, resulting from this revolving credit, resulted in the enrichment of the insolvent estate. It was upon the bankrupt's promise to pay the maturing payment that the appellee advanced this last payment three days before the payment from the bankrupt had been actually received. In Jaquith v. Alden, supra, a final payment, made eleven days after any goods were sold to the bankrupt, was sustained by the court. In the Wild Case, the final payment was not followed by the delivery of any goods. Controlled as we are by the principle of these cases, the last payment of $19,488 is in no different position regarding the claim of preference than the prior payments.

It will be noted that section 15 provides that "no such conveyance, assignment or

transfer shall be void in the hands of a purchaser for a valuable consideration without notice." It is undisputed that the payments made to the appellee were made in payment of debts justly incurred pursuant to the general agreement and in return for the advances of similar amounts. The correspondence preceding the last payment indicates the good faith of the appellee, and, indeed, denies the claim of intention by the bankrupt to prefer. The bankrupt was in financial difficulties, and it would seem clear that the appellee, if it knew the facts, would not have advanced to the bankrupt $19,040 in anticipation of repayment of substantially the same sum which was then due. The fairest view from the correspondence is that the bankrupt, facing the withdrawal of the $250,-000 credit, from which it had been receiving advances from the appellee, and necessitating a new line of credit elsewhere, would not be inclined to grant a preference to the appellee. Grandison v. Robertson, 231 F. 785 (C. C. A. 2). If the bankrupt realized that it would default in meeting its payment to the Banque Belge due on December 29, 1924, it must also have realized its inability to meet the acceptances discounted by the appellee which were due after that date to the extent of over $240,000. If it intended to prefer the appellee, it is hard to explain why the bankrupt insisted upon receiving the avails of the drafts sent in the letter of December 15, 1924. The fair conclusion would seem to be that the bankrupt met the payment to the appellee in consideration of which it received back substantially the same amount in cash, the bankrupt not intending to prefer the appellee. The appellee was a "purchaser for a valuable consideration without notice," as a recipient, under section 15 of the Stock Corporation Law. Moreover, the amount advanced by the bankrupt in the final payment of $19,-448, received December 26, 1924, substantially corresponds with the advance that the appellee made.

But it is said that the appellee should have known that Fred Stern & Co., Inc., was insolvent at the time of this payment. The stipulated testimony is that the appellee believed Stern's balance sheet of December 31, 1923, showing over one million net assets, to be correct and that during 1924 it had "no knowledge of any facts indicating any substantial change in the financial position of Stern, Inc., from that which existed on December 31, 1923."

Under the circumstances, we find all the payments were made in the ordinary course of business, and none were preferential within the meaning of section 15 of the Stock Corporation Law.

Order affirmed.

SWAN, Circuit Judge, concurs in result.

L. HAND, Circuit Judge (concurring).

The last payment I should have held to be a preference, except for Jaquith v. Alden, 189 U. S. 78, 23 S. Ct. 649, 47 L. Ed. 717, Yaple v. Dahl-Millikan Grocery Co., 193 U. S. 526, 24 S. Ct. 552, 48 L. Ed. 776, and Wild v. Provident Trust Co., 214 U. S. 292, 29 S. Ct. 619, 53 L. Ed. 1003. I am not sure that I understand on what principle those cases rest, but I cannot distinguish them on the facts. While they construed the Bankruptcy Act (11 USCA), not the New York Business Corporation Law (Consol. Laws, c. 4), it seems to me that, until the Court of Appeals decides otherwise, we should assume that the meaning of the term, "preference," should be taken as the same in each. There could be no intent to prefer, if the act in contemplation would not have effected a preference. On the authority of the cases cited and for that reason alone, I concur.