**COOPER PETROLEUM COMPANY,**
Appellant,

v.

**Henry HART, Trustee in Bankruptcy of International Marketing, Inc., Bankruptcy No. BK–1–37, Appellee.**

**Henry HART, Trustee in Bankruptcy of International Marketing, Inc., Bankruptcy No. BK–1–37, Appellant,**

v.

**COOPER PETROLEUM COMPANY,**
Appellee.

No. 24124.

United States Court of Appeals
Fifth Circuit.

June 29, 1967.

John A. Croom, Houston, Tex., for appellant.

Stanley P. Wilson, Bob J. Surovik, Abilene, Tex., for appellee.

Before THORNBERRY, GOLDBERG and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Cooper Petroleum Company here challenges a determination by the District Court in a bankruptcy proceeding that certain amounts paid by the bankrupt, International Marketing Incorporated, to appellant on open account, together with other amounts paid by the bankrupt on an account guaranteed by appellant, constitute voidable preferential payments recoverable by the trustee in bankruptcy. A thorough review of the record convinces us that while the judgment of the District Court is proper insofar as it goes, it must nevertheless be reversed to the extent that it fails to include as voidable preferences all payments received by appellant on open account from the bankrupt during the four-month period prior to bankruptcy. Bankruptcy Act § 60(a), 11 U.S.C. § 96 (a).

The bankrupt, International Marketing, is a closely held corporation engaged in the buying and selling of petroleum

and gas products with main offices located in Abilene, Texas. As of 1961, three individuals, Davis, Clark, and Wood, were the sole stockholders, officers, and directors of the corporation. In 1962 Albert Fagan, father-in-law of Clark and president, director, and dominant figure in the management of appellant Cooper Petroleum, acquired one-fourth of the bankrupt's stock. In November 1963 Fagan sold one-half of his stock in the bankrupt to his son, Donald Fagan, and the remaining one-half to his son-in-law, Arnold, both of whom were officers and directors of Cooper Petroleum. Like International Marketing, Cooper Petroleum, operating out of Houston, Texas, is also engaged in the business of buying and selling petroleum and gas products. The record reveals it was the practice of the two companies to conduct as much business as possible with each other, buying and selling to one another on open account to the extent of approximately $100,000.00 a month during 1963 and the first month of 1964. On June 2, 1964, the date on which the involuntary bankruptcy petition was filed, Davis held the office of president of the bankrupt, and Clark and Wood were vice presidents; all three also served as directors of the corporation. The officers of appellant Cooper Petroleum, all of whom were also directors, were Albert Fagan, president; Clark, vice president; Donald Fagan, treasurer; and Arnold, secretary. Clark, therefore, served as vice president and director of both corporations, receiving salaries from both. In addition, Davis, the bankrupt's president, spent much of the time in appellant's offices in Houston during the critical four-month period prior to the filing of the bankruptcy petition.

The record reflects that as of February 3, 1964, the first day of the four-month period preceding the filing of the bankruptcy petition, the bankrupt owed appellant a balance of $34,599.83 for goods delivered to it on open account. During the month of February, appellant continued to deliver goods to the bank-

rupt on that account in the amount of $45,000.00. There were no cash transactions, all sales being conducted on running open account, the normal terms of which were ten days. In the course of the four-month period the bankrupt made payments on the account in the total amount of $74,754.78. As to these transactions, the District Court concluded that a sum of $34,599.83 out of the total payments of $74,754.78 represented a voidable preference recoverable by the trustee in bankruptcy.

The record further establishes that in September 1963, La Gloria Oil & Gas Company, one of the principal suppliers and largest creditors of the bankrupt, had expressed dissatisfaction with the bankrupt's dilatory and insufficient payments on its account with La Gloria and had begun to pressure the bankrupt for payment. In order to reassure La Gloria of payment, appellant executed a written guaranty in favor of La Gloria by which it assumed the role of guarantor of the bankrupt's obligation to La Gloria. During the critical four-month period, the bankrupt paid to La Gloria the sum of $48,558.98 on the account covered by appellant's guaranty. The District Court concluded that such payments also represented a voidable preference.

■ Appellant's initial contention, consisting of eight separate specifications of error, is based essentially upon the single theory that none of the disputed transfers can properly be regarded as voidable preferential payments because the trustee failed to sustain the burden of demonstrating that appellant had reasonable cause to believe the bankrupt to be insolvent at the times the payments were made. Bankruptcy Act § 60(b), 11 U.S.C. § 96(b). In rejecting this contention we need only note that the record before us contains abundant evidence which makes it most difficult to reach any other reasonable conclusion but that appellant knew or had reason to believe the bankrupt to be insolvent during the period at issue. See Clower v. First State Bank, 5th Cir. 1965, 343

**780**

F.2d 808; Mayo v. Pioneer Bank & Trust Co., 5th Cir. 1961, 297 F.2d 392.

■■ As for the payments made by the bankrupt to La Gloria on the account guaranteed by appellant, it is settled that one in the position of guarantor of a bankrupt's obligation can be the recipient of a voidable preference when, as here, he is found to have reasonable cause to believe the bankrupt to be insolvent on the date of payment to the guarantee. E.g., Fenold v. Green, 2d Cir. 1949, 175 F.2d 247; Joseph F. Hughes & Co. v. Machen, 4th Cir. 1947, 164 F.2d 983, cert. denied, 333 U.S. 881, 68 S.Ct. 912, 92 L.Ed. 1156; Pennington v. Leff, S.D.Ala. 1960, 183 F.Supp. 884; see South Falls Corp. v. Rochelle, 5th Cir. 1964, 329 F.2d 611. See generally 3 Collier, Bankruptcy, ¶ 60.17 (14 ed.1966). The fact that La Gloria, the creditor being paid, may have had no reason to believe the bankrupt to be insolvent on the dates of payment in no way impugns the validity of the District Court's determination that the payments constituted a voidable preference as to appellant, who did in fact have knowledge of the bankrupt's insolvency and was clearly benefited by the discharge of its contingent liability under the guaranty.

■ We are further convinced that the District Court correctly applied the $74,754.78 paid by the bankrupt to appellant on open account first to the balance of $34,599.83 owing on that account at the beginning of the four-month period.[1] That balance clearly represented an antecedent debt, the payment of which during the four-month period constituted a voidable preference within contemplation of the Bankruptcy Act. Section 60 (a)-(b), 11 U.S.C. § 96(a)-(b). The District Court declined, however, to view as a voidable preference the remaining $40,154.94 of the total $74,754.78 in payments made by the bankrupt to appellant during the critical period. It reasoned that since appellant had continued to deliver on account to the bankrupt additional goods in the amount of $45,-000.00 during the four-month period, an amount which exceeded the remaining $40,154.94 in payments, the estate of the bankrupt was thereby enriched by the aggregate transaction and no prejudice resulted to other creditors. In justification of its determination that the credit of $40,154.94 should be allowed to stand, the District Court placed reliance upon the so-called "net result rule." That rule, as originally formulated by the Supreme Court, provides that where payments are made on open account for goods sold and delivered within the four-month period, and the net result is to enrich the bankrupt's estate by the total sales less total payments, such payments will not be regarded as voidable preferential transfers even though there occurred no concurrent exchange of specific goods in return for specific payments. Joseph Wild & Co. v. Provident Life & Trust Co., 1909, 214 U.S. 292, 29 S.Ct. 619, 53 L.Ed. 1003; Yaple v. Dahl-Millikan Grocery Co., 1904, 193 U.S. 526, 24 S.Ct. 552, 48 L.Ed. 776; Jaquith v. Alden, 1903, 189 U.S. 78, 23 S.Ct. 649, 47 L.Ed. 717. See generally 3 Collier, Bankruptcy ¶¶ 57.19, 60.23 (14 ed.1966). It is significant, however, that the Supreme Court decisions in which the rule arose as well as subsequent cases relying upon those decisions appear to have placed much more emphasis upon the creditor's lack of knowledge of the debtor's insolvency to justify application of the rule than upon any rationalization as to enrichment of the debtor's estate. See, e. g., Joseph Wild & Co. v. Provident Life & Trust Co., supra; Jaquith v. Alden, supra; In re Fred Stern & Co., 2d Cir. 1931, 54 F.2d 478; In re Grocers' Baking Co., N.D.Ala. 1920, 266 F.

1. Under Texas law, payments made on open account without agreement as to their specific application are to be credited to the oldest unpaid portion of the account. Wall v. Young County Lumber Co., 368 S.W.2d 789 (Tex.Civ.App.—Fort Worth 1963, no writ); Pyle v. Byrne, 331 S.W.2d 507 (Tex.Civ.App.—Texarkana 1959, writ ref'd n. r. e.)

900, aff'd sub. nom., 5th Cir. 1921, 277 F. 1015; 3 Collier, Bankruptcy ¶ 60.23, at 875. Indeed, several courts have persuasively indicated that where, as here, the creditor accepting payments on open account is found to have had reason to believe the debtor to be insolvent the rule is simply inapplicable, and *all* such payments, having been made in satisfaction of an antecedent debt, should be properly regarded as voidable preferences.[2] See *Ricotta v. Burns Coal & Bldg. Supply Co.,* 2d Cir. 1959, 264 F.2d 749, 751 & n. 1; *Campanella v. Liebowitz,* 3d Cir. 1939, 103 F.2d 252; *In re Farmers' Store & Supply Co.,* N.D.W.Va. 1914,

2. In *Campanella v. Liebowitz,* 3d Cir. 1939, 103 F.2d 252, the Third Circuit examined the purpose of the rule in its historical context and advanced a persuasive, well-reasoned explanation for limiting its application to only those cases where the creditor accepted payments on open account with a good faith belief as to the debtor's solvency. Rejecting the contention that the rule was intended to govern all cases involving payments received by a creditor on open account during the four-month period regardless of the creditor's knowledge with respect to the debtor's insolvency, the court stated:

> In support of their contention, the appellants rely chiefly upon the case of *Yaple v. Dahl-Millikan Grocery Co.,* 193 U.S. 526, 24 S.Ct. 552, 48 L.Ed. 776. That case, however, was decided under the Bankruptcy Act as it read prior to the amending Act of February 5, 1903. 32 Stat. 797 to 801. Prior to such amendments, a creditor who had received a technical preference, whether voidable or not, had to surrender the amount of such preference before he was allowed to prove a claim against the bankrupt estate. Section 57g, 30 Stat. 560, 11 U.S.C.A. § 93(g) note. This section, strictly construed, would have worked definite hardships against creditors who in good faith and without knowledge of the debtor's insolvency, had received technical preferences. Recognizing this fact, the Supreme Court, in the Yaple v. Dahl-Millikan case, supra, extended protection to creditors under such circumstances who had innocently received technical preferences in the form of payments on running accounts. However, nothing in that decision indicates that such protection is extended to creditors on running accounts who had reasonable cause to believe that they were being preferred at the time the payments were being made. In 1903, section 57g was amended so as to require preferred creditors to surrender only the voidable preferences which they had received, before being allowed to prove their claims against the bankrupt estate. 32 Stat. 799, 11 U.S. C.A. § 93(g). Thus Congress, as well as the Supreme Court, recognized the necessity of affording at least some protection to creditors who in good faith had received a payment of a debt within the four months' period.

> The decision in Yaple v. Dahl-Millikan Grocery Co., supra, whatever its effect upon the Bankruptcy Act prior to the amendments of 1903, did not determine for all time that payments received on open accounts were, because of that fact alone, any less voidable than payments on isolated transactions. As the law stands today, any payment, received within four months of bankruptcy by a creditor who has reasonable cause to believe that the debtor-payor is insolvent, is a voidable preference and may be recovered by the trustee. Section 60(b), 11 U.S.C.A. § 96(b).

103 F.2d at 253–254.

Employing the same analysis, Collier concludes in his leading treatise on bankruptcy that

> the rule was a product of its time, namely a time when preferences were deemed to be subject to surrender for the sole reason that they were technically preferences, irrespective of the creditor's knowledge of the debtor's insolvency. It was designed to mitigate the rule of Pirie v. Chicago Title & Trust Co. [1901, 182 U.S. 438, 21 S.Ct. 906, 45 L.Ed. 1171] holding that anything amounting to a technical preference under § 60a had to be surrendered before a claim of the same creditor could be allowed. The reason for the rule would thus seem to have vanished in 1903, when * * * § 57g was amended so as to require surrender only in certain cases of voidable transactions, which in their turn required some intent or knowledge on the part of the creditor amounting to bad faith. Accordingly, the rule may now be considered as largely obsolete, for either the creditor acted in good faith, in which case there is no voidable preference and, therefore, no room for a duty to surrender; or he acted with reasonable cause to believe that his debtor was insolvent, in which case the rule by its own terms would not apply.

3 Collier, Bankruptcy ¶ 57.19, at 290–91. (Footnotes omitted.)

214 F. 505. Here the record reflects that the sales to the bankrupt were on terms of ten days. Such extension of credit, though relatively brief, inarguably gave rise to an antecedent debt. See Engelkes v. Farmers Co-operative Co., N.D.Iowa 1961, 194 F.Supp. 319, 324. Consequently, when appellant, with knowledge of the bankrupt's insolvency, continued to accept payments on account, which were clearly not made in return for the concurrent transfer of goods, the fund to which other creditors of the same class could resort was thereby diminished. In view of such circumstances, we are of the firm conviction that the entire sum of $74,754.79 received by the creditor on open account during the four-month period must be regarded as a voidable preferential transfer recoverable by the trustee in bankruptcy.

We have carefully reviewed all of appellant's remaining contentions and have found them devoid of merit. Accordingly, the judgment of the District Court is affirmed in part and reversed in part and remanded with instructions to modify that judgment in accordance with this opinion.