**In re ST. LOUIS GLOBE DEMOCRAT, INC., Debtor.**

**Curtis L. MANN, Trustee, Plaintiff,**

**v.**

**MISSOURI GENERAL INSURANCE AGENCY, INC., Defendant.**

**Bankruptcy No. 85–01605(2).
Adv. No. 87–0216(2).**

United States Bankruptcy Court,
E.D. Missouri, E.D.

April 6, 1989.

David A. Sosne, Clayton, Mo., for plaintiff.

Jack F. Allen, Clayton, Mo., for defendant.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### BACKGROUND

On August 14, 1987, the Trustee filed a Complaint alleging a preferential transfer of $4,860.00 from the Debtor to the Defendant, Missouri General Insurance Agency, Inc. ("Missouri General"). Missouri General filed its Answer on September 26, 1987 and its amended Answer on February 9, 1988. Depositions, interrogatories and other discovery motions followed and a hearing was held on February 29, 1988.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F), which the Court may hear and determine.

### FINDINGS OF FACT

1. On April 27, 1984, Debtor purchased insurance from the Defendant Missouri General. Apparently, four policies were issued on this date: Multiperil, umbrella, commercial automobile and workers compensation. Two additional policies were issued on May 10, 1984, a comprehensive general liability policy and a "commercial—other" policy which covered computers. Three other policies were initiated, one in August of 1984, another in October of 1984, and the third in November, 1984. The premiums on all these policies were to be paid thirty days after invoice is received, but no payments were made until June of 1985.

2. All insurance policies lapsed by early 1985 for nonpayment and no replacement policies were issued.

3. Debtor filed bankruptcy on August 19, 1985.

4. The following payments, totaling $4,860.00, were made to Missouri General for past due premiums on the insurance policies issued in 1984. These payments cleared the bank and are within the ninety-day preference period:

| | | |
|---|---|---|
| June 7, 1985— | $ 500.00 | |
| June 13, 1985— | $ 500.00 | |
| July 12, 1985— | $3,500.00 | —Cashier Check |
| August 6, 1985— | $ 90.00 | |
| August 9, 1985— | $ 90.00 | |
| August 14, 1985— | $ 90.00 | |
| August 16, 1985— | $ 90.00 | |

5. The $3,500.00 payment of July 12, 1985 was a lump sum payment for several checks issued by the Debtor from April through July of 1985, but not paid due to insufficient funds.

6. The Debtor's records did not reflect any services rendered by Missouri General during the 90-day preference period from May 21, 1985 through August 19, 1985. The Debtor's records reflect that invoices for services rendered were received on January 4 and 7, 1985.

7. The Trustee has not recovered any portion of the $4,860.00 from Missouri General.

### CONCLUSION OF LAW

The Trustee seeks to avoid the Debtor's payment of $4,860.00 to Missouri General as a preferential transfer within ninety days before the day of filing of Debtor's involuntary petition in bankruptcy pursuant to 11 U.S.C. § 547(b). The Defendant contends that the transfers are not preferential because:

"1. The checks received by defendant from the Globe from June 7, 1985 through August 16, 1985, although within the 90 day preference period, were nevertheless payments by the Globe to defendant of an indebtedness arising out of a running account for premiums due on various casualty insurance policies, and the obligations to pay the premiums were incurred by the Globe in the ordinary course of business of the Globe and defendant. The payments were also made in the ordinary course of business of the Globe and defendant and the payments were all made according to ordinary business terms, i.e., according to the 'ordinary' course of business as between the Globe and defendant.

2. The giving of the $3,500 cashier's check by the Globe to defendant on July 12, 1985, in exchange for seven $500 bounced checks which had been delivered by the Globe to defendant on the dates set forth in ¶ 4 of the amended answer, all of which were delivered outside of the 90 day preference period, was a part of a series of prearranged and integrated steps which in fact constituted a single transaction, i.e., a 'step transaction'. Accordingly, the recognized rule that the date of delivery of a check (which ultimately was paid, albeit by means of a cashier's check) applies in this case in determining whether there was a preference, rather than using the date of payment. The payments occurred when each of the $500 check was first delivered, even though they first bounced. The delivery of the $3,500 cashier's check therefore did not constitute a preference.

3. The return by defendant to the Globe of the seven $500 checks which had bounced in exchange for the $3,500 cashier's check given by the Globe constituted the contemporaneous giving of new value by defendant to the Globe, e.g., the return of the seven $500 checks themselves and the foregoing of defendant's right to request the bringing of criminal proceedings against the Globe, its officers, etc., for passing bad checks."

The Trustee has sustained his burden of proving the elements of a Section 547(b) preferential transfer. This shifts the burden to the Defendant, Missouri General, to prove that the transfer qualifies as one of the exceptions set out in Section 547(c), and, therefore, one which the Trustee may not avoid.

First, Missouri General raises two interrelated defenses. One is that the payments are not preferential because they arise out of a "running account".

■ The running account defense or running account rule was a judicially created remedy designed to mitigate the harsh result of the preference provision in the pre-1903 version of the Bankruptcy Act. *See, Kimball v. E.A. Rosenham Company*, 114 F. 85 (8th Cir.1902). But when the Act was amended in 1903 most courts held that this defense "disappeared". *In re Frigitemp Corporation*, 753 F.2d 230 (2d Cir.1985). It is immaterial to this case whether this defense was deleted by the 1903 amendments or if it was resurrected by either the Bankruptcy Reform Act of 1978 or the Amendments of 1984, since the payments to Missouri General were not on a "running account". A running account is created when the debtor makes a payment, the creditor extends new credit, "and the net result is [a corresponding] increase in the value of the estate." *Jaquith v. Alden*, 189 U.S. 78, 83, 23 S.Ct. 649, 651, 47 L.Ed. 717 (1st Cir.1903). Because the net value of the bankruptcy estate increases, these type of payments were not considered preferential. The payments from Globe were preferential. They were unconditional, not contingent upon additional insurance coverage, and the debt was at least six months past due. No new credit extended and there was a net decrease in the value of the estate.

■ Missouri General also alleges that payment was made in the ordinary course of business, pursuant to Section 547(c)(2) which provides:

"(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;"

The purpose of the ordinary course of business exception is to ensure that normal commercial transactions are not caught in the net of the Trustee's avoidance powers. *In re Colonial Discount*, 807 F.2d 594, 600 (7th Cir.1986). Missouri General attempts to establish that it was the normal course for the Globe to pay its debts with bad checks and later redeem them with cashier's checks or replacement checks. This was not the ordinary course of business between the Debtor and Missouri General.

In depositions, Missouri General stated that the insurance premiums on all accounts are due upon receipt of the invoice, or within thirty days, including the Globe account and this was also standard procedure for the insurance industry. When payments were not received, Missouri General began assessing late charges in January of 1985. Although during this period many checks were returned for insufficient funds, others were paid.

The third defense by Missouri General attempts to establish that it was a single transaction when the Globe issued checks, which were not honored, and were replaced at least several weeks later. Then Missouri General asserts that the date the bounced checks were delivered should be used to calculate if the transfers were within the 90–day preference period.

 Under Section 547(b)(4) of the U.S. Bankruptcy Code, if a transfer of assets from the debtor to the creditor occurs "on or within ninety days of the filing of the bankruptcy petition ..." then the trustee may avoid the transfer. For the purposes of Section 547(b)(4), a transfer occurs when the check is honored, not when it is delivered. *In re Midwest Boiler and Erectors, Inc.*, 54 B.R. 793 (Bankr.E.D.Mo.1985), *In the Matter of Fasano/Harris Pie Company*, 43 B.R. 871 (Bankr.W.D.Mich.1984). Therefore, even if the Court were to assume there was only one transaction, no transfer occurred until the checks were paid. Thus, the transfers did not take place until the bounced checks were replaced with cashier's checks or checks that were honored by the bank, all of which were in the 90–day preference period.

Missouri General's final argument is that the $3,500 cashier's check was received from the Debtor in exchange for the bounced checks and that this was a contemporaneous exchange for new value under Section 547(c)(1) and is therefore excepted from the Trustee's avoidance powers.

The purpose behind the contemporaneous exchange exception, as well as the ordinary course of business exception, is to protect both the debtor and the creditor in those normal, ordinary transactions. This allows them to function in the precarious time period before debtor files bankruptcy.

In the instant case, the payment by the Debtor with a cashier's check represented satisfaction of a pre-existing debt, and was not a contemporaneous exchange for new value and although the "release" by Missouri General of the bounced checks and any concomitant criminal liability may be of some value, it does not constitute new value as defined by Section 547(a)(2), and, therefore, cannot qualify as a contemporaneous exchange for new value under Section 547(c)(1).

CONCLUSION

Trustee's Complaint is GRANTED and Missouri General is ordered to return the $4,860.00 to the estate. Interest is granted at nine percent (9%) per year from April 6, 1989.

An Order consistent with this Memorandum Opinion will be entered this date.