In re SWALLEN'S, INC., Debtor.

Swallen's, Inc., et al., Plaintiffs,

v.

Corken Steel Products Co., Defendant.

Bankruptcy No. 95–14476.
Adversary No. 97–1262.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Dec. 19, 2000.

Reuel D. Ash, Cors & Bassett, Cincinnati, OH, for debtor.

Richard D. Nelson, Cohen, Todd, Kite & Stanford, Cincinnati, OH, for creditors.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

BURTON PERLMAN, Bankruptcy Judge.

Plaintiffs in this adversary proceeding are the Chapter 11 debtor in the bankruptcy case identified in the caption and the Official Committee of Unsecured Creditors active in the case. The proceeding was filed for the recovery by plaintiffs, pursuant to 11 U.S.C. § 547(b), of allegedly preferential payments made to defendant Corken Steel Products Company. Defendant, in its motion for summary judgment, asserts an "ordinary course of business" defense and "new value" defenses. Plaintiffs have submitted a cross-motion for summary judgment. These motions for summary judgment are now before the court.

This court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(F).

In support of its motion for summary judgment, defendant offers an affidavit of defendant's Credit Manager, Michael Bohman with Exhibit A, a copy of a "Proposed Swallen's Payment Plan" dated July 17, 1995 with accompanying message; and Exhibit B, "Analysis of Swallens Preference Period." Plaintiffs' cross-motion is supported by copies of checks paid by debtor to defendant and a Payment History of payments by Swallen's to defendant covering January 1, 1995 to October 31, 1995. In addition to the above referenced documents, defendant also submitted, with its Reply, a supplemental affidavit of Michael Bohman, to which are attached exhibits. Exhibits A and B are simply additional copies of exhibits accompanying the original Bohman affidavit. There is also an

Exhibit C, "Swallen's, Inc. A/R [Accounts Receivable] Analysis." Defendant also submitted with its reply an affidavit by Susan Brickweg, whom defendant refers to as a "disinterested credit manager." Attached to plaintiffs' Reply is the affidavit of Margaret Berold, Administrative Assistant to debtor, to which is attached a resubmission of the Payment History from Swallen's to defendant for 1995.

The following undisputed facts emerge from the record before us. The debtor, prior to its bankruptcy filing, engaged in the retail sale of consumer products. Defendant, a wholesale distributor, provided debtor with HVAC equipment for sale in debtor's retail operation over a period of ten years. The debtor purchased the HVAC equipment from defendant under an open line of credit.

In the early part of 1995, defendant, before the season, shipped goods to the debtor. The understanding was that debtor would pay for those goods in April, May and June, 1995. Debtor failed to live up to this commitment. So, on July 17, 1995, the parties entered into an agreement whereby defendant would continue to ship goods to the debtor on open account, and be paid for those shipments the following month. In addition, there would be a second payment each month for liquidation of the arrearage, with debtor to complete payment of the arrearage by the end of 1995. We reproduce the agreement in full:

PROPOSED SWALLEN'S PAYMENT PLAN

7/17/95

Based on 6–30–95 balance of $59150.43

| PAYMENT DATE | AMOUNT |
| --- | --- |
| 7–24 | $16232.10 (Inv.408690–#) |
| 8–10 | July purchases less 2% discount |
| 8–24 | $8583.67 |
| 9–10 | August purchases less 2% |
| 9–24 | $8583.67 |
| 10–10 | September purchases less 2% |
| 10–24 | $8583.67 |
| 11–10 | October purchases less 2% |
| 11–24 | $8583.66 |
| 12–10 | November purchases less 2% |
| 12–24 | $8583.66 |

2% discount on current month's purchases is not to be taken if any previous payments are unpaid.

Thereafter, during the preference period, August, September, and October, 1995, defendant received the following payments on account of the indicated invoices from the debtor, according to the Payment History exhibit presented by plaintiffs:

| CHECK DATE | CHECK AMOUNT | INVOICES BETWEEN | |
| --- | --- | --- | --- |
| 8–10–95 | 8,618.61 | 7–6–95 | 7–18–95 |
| 8–31–95 | 8,415.52 | 3–21–95 | 6–14–95 |
| 9–11–5 | 19,819.64 | 8–2–95 | 8–30–95 |
| 9–28–95 | 7,693.02 | 5–1–95 | 6–7–95 |
| 10–13–9 | 10,000.00 | 3–21–95 | 6–21–95 |
| 10–19–95 | 19,989.67 | | |

The invoices paid for by the 10–19–95 payment are not shown in this tabulation because payments for two different groups of invoices were paid by that check. Thus, that check paid invoices for the preceding month, 9–1–95 to 9–28–95, those invoices totaling $3,261.62.[1] The check also is in payment for invoices from 5–8–95 to 6–30–95, totaling $16,737.05.[2]

The payments made by Swallen's to defendant in August, September, and October, 1995, carried out the plan contemplated by the parties in the July 17, 1995 agreement. That is, the August 10, 1995 check in the amount of $8,618.61 was on account of July purchases. The August 31, 1995 check in the amount of $8,415.52 was on account of invoices some months earlier. Similarly, in September there was a first payment in the amount of $19,819.64 on account of purchases in August, while

1. Figures derived by the court from plaintiff's payment history.

2. Figures derived by the court from plaintiff's payment history.

there was a second payment in the amount of $7,693.02 in September on invoices dating from May and June, 1995. The final October payment, that for October 19, 1995 as shown in the preceding paragraph, departs from this pattern. Hereafter, the August 10, 1995, September 11, 1995, and $3,261.62 of the October 19, 1995 payments will be collectively referred to as the "current payments." The August 31, 1995, September 28, 1995, and $16,737.05 of the October 19, 1995 payments will hereafter be collectively referred to as the "arrearage payments." (The · October 13, 1995 payment of $10,000.00 is aberrational for while its date closely follows the payment scheduled in the July 17, 1995 agreement for invoices in September, the invoices attributed to it are for an earlier period. We therefore group this payment as an "arrearage" payment.)

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable in bankruptcy proceedings by Fed.R.Bankr.P. 7056. The moving party has the burden to show that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## DISCUSSION

■ The Bankruptcy Code, at 11 U.S.C. § 547(b), permits a trustee, or debtor-in-possession, to avoid certain transfers made by the debtor within 90 days of the petition date. In order to qualify as a voidable preference, the transfer must: (1) benefit a creditor; (2) be on account of an antecedent debt; (3) be made while the debtor is insolvent; (4) be made within 90 days of bankruptcy filing; and (5) enable the creditor to receive more than if the transfer had not been made. *See* 11 U.S.C. § 547(b). There is no dispute that the six transfers at issue are preferences. Defendant, however, raises a § 547(c)(2) ordinary course defense, a § 547(c)(1) contemporaneous exchange for new value defense, and a § 547(c)(4) subsequent advance defense, a defense also relating to new value. Defendant bears the burden of proof with respect to § 547(c) defenses, and must do so by a preponderance of the evidence. 11 U.S.C. § 547(g); *see also Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811 (6th Cir.1996).

The position of defendant on its motion for summary judgment is that the evidence establishes that one or more of the defenses in § 547(c) entitles it to judgment denying relief to plaintiffs. Plaintiffs' motion, to the contrary, is that the evidence establishes that none of the § 547(c) defenses can avail defendant. Thus, the same issues arise in the respective motions of the parties, and a single discussion will serve to dispose of both motions. Our discussion is organized under the heading of each of the pertinent defenses.

## I. Section 547(c)(2). Ordinary Course Defense.

■ Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

As defendant points out, the court evaluates 'ordinary course' requirements with regard to both (a) the previous business dealings between the debtor and creditor and (b) the prevailing standards in the industry. *See, e.g., Speco v. Canton Drop Forge, Inc. (In re Speco Corp.),* 218 B.R. 390 (Bankr.S.D.Ohio 1998). The ordinary course defense requires a subjective analysis of whether 'the debt and its payment are ordinary in relation to other business dealings between *that* creditor and *that* debtor.' *In re Carled,* 91 F.3d 811 (6th Cir.1996) at 813 (emphasis added). (Citing *Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.),* 957 F.2d 239, 244 (6th Cir.1992)). The determination is based on the surrounding facts, and include such factors as "the history of the parties' dealings with each other, timing, amount at issue, and the circumstances of the transaction." *Brown v. Shell Canada Ltd. (In re Tenn. Chemical Co.),* 112 F.3d 234, 237 (6th Cir.1997) (citing *Yurika Foods Corp. v. United Parcel Serv. (In re Yurika Foods Corp.),* 888 F.2d 42, 45 (6th Cir. 1989)).

There is a fundamental issue which must be dealt with at the outset of this discussion. That question has to do with how the July 17, 1995 agreement is to be viewed for purposes of the present analysis. As we earlier noted, that agreement provided for two kinds of payments, "current payments" and "arrearage payments." Defendant advances different arguments regarding the two kinds of payments. Plaintiffs, however, argue that the agreement is a restructuring agreement, and restructuring agreements are *ipso facto* outside the ordinary course of business as between the debtor and the particular creditor, citing *J.P. Fyfe, Inc. of Fla. v. Bradco Supply Corp.,* 891 F.2d 66 (3rd Cir.1989), and a number of other cases.

On that basis, plaintiffs argue that it is inappropriate to analyze separately the kinds of payments provided for in the agreement. This difference of opinion between the parties relates particularly to defendant's defense that payments were made in the ordinary course of business and therefore are shielded from recovery as a preference by the plaintiffs pursuant to § 547(c)(2).

■ This court is persuaded that the better view is that we must look to the separate kinds of payments provided for in the agreement, and the issue of whether payments were made in the ordinary course of business is not *ipso facto* determined by the fact that there was a restructuring agreement. We approve of the reasoning and holding of *Arrow Electronics, Inc. v. Justus (In re Kaypro),* 218 F.3d 1070 (9th Cir.2000), and rely on that holding in reaching this conclusion.

Having resolved that the payment agreement of July 17, 1995 does not *ipso facto* conclude the availability of the ordinary course defense to defendant, we now analyze separately the application of the ordinary course defense asserted by defendant, first, to the "current payments," and second, to the "arrearage payments."

### A. "Current Payments"

■ Looking at 11 U.S.C. § 547(c)(2)(A), the focus is on the incurring of the debt. "Current payments" were made on account of shipments of goods under an open line of credit which, undisputedly, was the normal course between these parties. The debts for which "current payments" were made were therefore incurred in the ordinary course of business. Section 547(c)(2)(A) is satisfied.

Next we must look at § 547(c)(2)(B), whether the payment was made in the ordinary course of dealing between these

parties. A § 527(c)(2)(B) analysis is fact specific and involves review of several factors, including the timing, nature and amount of the transaction in question. *See, e.g., Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239, 244 (6th Cir.1992) (citing *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir.1989); *Yurika Foods Corp. v. United Parcel Serv. (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir.1989)).

As to the "current payments," the provision of the July 17, 1995 agreement is that payment is to be made by the tenth of the following month for invoices rendered the preceding month. The Payment History presented by plaintiff for 1995 shows no practice conforming to the schedule for "current payments" established in the July 17, 1995 agreement, which required payment the following month for shipments the preceding month. Nor does the payment information provided in the Bohman affidavit for years 1993 and 1994 show that such a schedule was the ordinary practice between these parties. We therefore conclude that the test in § 547(c)(2)(B) is not met as to "current payments." Indeed, the evidence presented by the parties conclusively shows that the rigid schedule for current payments provided in the July 17, 1995 agreement is a marked departure from prior practice between these parties.

In her affidavit attached to the plaintiff's response memorandum, Berold supports this by saying that "[T]he payment history indicates that the average duration between invoices and payments was sporadic between January, 1995 until around the time Corken Steel and Swallen's, Inc. entered into a new payment plan in mid-July, 1995." She refers to the period between invoice and payments reflected in the Payment History which is attached as an exhibit to her affidavit. The evidence, then, affirmatively shows that the ordinary course defense is not available to defendant as to "current payments."

## B. "Arrearage Payments"

Defendant then contends that the "arrearage payments" were made in the ordinary course of business. Again, we focus on the evidence presented by the parties on these motions. To support its contention that these payments were made in the ordinary course of business, defendant relies upon the affidavit of Michael Bohman.

 In his affidavit, Bohman asserts that the accounts receivable aging reports of defendant shows that the average days to payment "has exceeded 30 days for every month since June, 1993." He then says that the range for 1995 was greater than that for 1994. All that Bohman is saying is that it was common for Swallen's to pay invoices late by varying lengths of time. It is, however, not sufficient to assert that it was common for Swallen's to be late in paying its bills to defendant to settle the matter; it is necessary to show that a historic pattern of payments was followed. While we are informed in the Bohman affidavit that "Swallen's each year made substantial equipment purchases in the first quarter with extended payment terms on such purchases" we have no quantification for any of the years as to the magnitude of those purchases and what the pattern was in paying for them. What the record before us certainly does not show is that there was a history of payment of arrearages within twelve months, an obligation imposed upon Swallen's as to "arrearage payments" by the July 17, 1995 agreement. We hold that defendant has failed to sustain its burden of showing that the "arrearage payments" were made in ordinary course.

## II. Section 547(c)(1). Contemporaneous Exchange for New Value.

■ We next address defendant's § 547(c)(1), the contemporaneous exchange for new value, defense. After reviewing the evidence before us, plaintiffs' payment history, and defendant's Exhibit C, the account receivable analysis, it is clear that there simply has been no contemporaneous exchange in connection with any of the transactions between these parties, whether "current payments" or "arrearage payments." At best, debtor paid a number of invoices with a single check a month after they were incurred. Defendant has presented no authority and we have found none supporting the proposition that this can be regarded as a contemporaneous exchange.

## III. Section 547(c)(4). Subsequent Advance.

■ Finally, we deal with the § 547(c)(4) defense, the subsequent advance rule. In Exhibit B attached to the Bohman affidavit by defendant, it is apparent that defendant seeks to offer evidentiary support for the "net result" rule. That rule applied in cases under the Bankruptcy Act, but it is now settled that it is not available to defendant under the Code. *Waldschmidt v. Ranier et al. (In re Fulghum Const. Corp.),* 706 F.2d 171 (6th Cir. 1983). Section 547(c)(4) instead makes available what has come to be known as the subsequent advance rule. *Hunter v. Amerisource Corp. (In re Parkview Hosp.),* 213 B.R. 509 (Bankr.N.D.Ohio 1997). That this defense is particularly relevant here is apparent from the following:

> The exceptions in paragraphs (1), (2), and (3) of section 547(c) are normally applied to individual transfers by the debtor. If the creditor successfully brings the preferential transfer under one of these exceptions, the debtor's transfer is not avoidable by the trustee. Difficulty in analysis ensues, however, when the debtor deals with a creditor on an open or running account, making frequent purchases of goods or property and making payment on account at various intervals, some of which fall within the preference period. The subsequent advance exception of section 547(c)(4) is Congress' solution for the running account creditor.

5 Lawrence P. King, *Collier on Bankruptcy,* ¶ 547.04[4] at 547–58 (15th ed. rev.2000) (footnote omitted).

*Collier* then goes on to say:

> The key difference between the net result rule and section 547(c)(4) is that the former ignores the timing of the creditor's advances to the debtor, and permits the creditor to net *all* transfers during the preference period. Section 547(c)(4), on the other hand, with its requirement that the creditor's transfer be *subsequent* to the debtor's preferential payments, is obviously less favorable to the creditor who keeps running accounts with the debtor.

*Id.* at 547–59.

■ Defendant, having provided new value subsequent to the first payment plaintiff received during the preferential period, the payment of August 10, 1995, is entitled to utilize the subsequent advance defense in this case.

■ While we have no doubt that the § 547(c)(4) defense is available to defendant, the application of the defense in the present case raises certain questions. The authorities referred to above make it clear that the correct application of the subsequent value rule does not allow defendant credit for any new value provided to Swallen's prior to the first preferential payment made by check, that of August 10,

1995. It is the position of defendant that it is entitled to set off all new value, including that for which the August 10, 1995 check was in payment, against all preferential payments made during the preference period. This position of defendant is certainly incorrect as to new value provided prior to August 10, 1995. *See Slone–Stiver v. Clemins Oil Co. (In re Tower Metal Alloy Co.),* 193 B.R. 273 (Bankr. S.D.Ohio 1996).

■■■■■■ It is then further the position of defendant that the subsequent value defense allows it to offset new value provided against all payments made by Swallen's to it, that is, both "current payments" and "arrearage payments." This court disagrees. It may offset new value provided subsequent to August 10, 1995 only against what we have designated "current payments."

We find little guidance in case law in resolving this question, and we base our conclusion on the following considerations. The recovery of payments during the preference period for the benefit of all creditors, so that there may be an equitable distribution among creditors, is a fundamental purpose of the preference section, § 547 of the Bankruptcy Code. *See, e.g., Begier v. IRS,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990); *Warren v. Huntington Nat'l. Bank (In re Ullman),* 80 B.R. 101 (Bankr.S.D.Ohio 1987); *Collier on Bankruptcy,* ¶ 547.01 at 547–9. An exception to that general policy is made by § 547(c)(4) in order to encourage trade creditors to continue dealing with a troubled business, and to treat fairly a creditor which has replenished the debtor's estate after having received a preference. *See, e.g., New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.),* 880 F.2d 679 (3rd Cir.1989); *Brandt v. Sprint Corp. (In re Sonicraft, Inc.),* 238 B.R. 409 (Bankr.N.D.Ill.1999). The

§ 547(c)(4) exception does not undermine the general policy against preferential transfers because the advancement of new value replenishes and does not reduce the debtor's estate. *See e.g., Precision Masters, Inc. v. Wilson–Garner Co. (In re Precision Masters, Inc.),* 51 B.R. 258 (Bankr.S.D.Ind.1984). Given these policy considerations, we conclude that it would be inappropriate to set off new value received by Swallen's against the "arrearage payments" in applying § 547(c)(4) in the present case. "Arrearage payments" are not on account of a replenishment of the estate. They are on account of debt incurred antecedent to the preference period.

In reaching the conclusion against allowing defendant a § 547(c)(4) credit on account of "arrearage payments," we couple with the foregoing considerations the teaching from Collier that " § 547(c)(4) is Congress' solution to the *running account* creditor." *Collier on Bankruptcy,* ¶ 547.04[4] at 548. Black's Law Dictionary defines "running account" as an "open, unsettled account that exhibits the reciprocal demands between the parties." Black's Law Dictionary 19 (7th ed.1999); *see also In re Ira Haupt & Co.,* 304 F.Supp. 917, 945 (S.D.N.Y.1969) (describing that the running account theory is "premised on the feeling that...there are day-to-day transactions between debtor and creditor running both ways.") While with "current payments" there are reciprocal demands, Swallen's for current shipment of goods, defendant for payment for them, the same is not true as to "arrearage payments." Shipment of goods is long past for which these payments are required. The reciprocity required for a running account is absent as to them. "Current payments" by Swallen's are part of a running account, "arrearage payments" are not.

Therefore, on the record presented to us, we grant partial summary judgment, holding that defendant can set off new value against "current payments" as we have defined that term. We cannot, however, on the record before us, fix a dollar amount for that calculation. The reason that we cannot do so is that defendant's Exhibit B, the exhibit it has produced for the purpose of applying the § 547(c)(4) exception, credits new value against "arrearage payments" on account of old debt. Further, the invoices referenced in plaintiff's Payment History include evidence of new value advanced during the preference period, but the respective values of the parties are not consistent. To complete the computation on application of the § 547(c)(4) exception, it is necessary to have an accurate valuation of new value received by Swallen's subsequent to the August 10, 1995 date. There therefore remains for hearing an issue of fact of the dollar amount of the credit to which defendant is entitled on account of new value.

\* \* \* \* \* \*

From the foregoing discussion, we conclude that partial summary judgment should be granted as follows:

1. Defendant's motion for summary judgment is denied in its entirety, EXCEPT that defendant may, on the basis of § 547(c)(4), set off against "current payments" received from debtor on August 10, 1995 and thereafter, new value given after August 10, 1995.

2. Plaintiffs' motion for summary judgment is granted in its entirety EXCEPT that it is denied to the extent that defendant is entitled to a credit for new value as reflected in the preceding paragraph.

3. What remains to be done appears to be a mathematical computation upon which the parties may be able to agree without an evidentiary hearing. Accordingly, the parties are directed to confer without delay. They will furnish the court with a letter status report by January 15, 2001, on the basis of which the court will decide what further action is necessary to conclude this matter.

So Ordered.