OPINION
{¶ 1} Defendant-appellant, HKM Direct Market Communications, Inc., appeals from the December 4, 2002 judgment of the Franklin County Court of Common Pleas, entering judgment for plaintiff-appellee, J. Lee Covington, II,[1] in his capacity as liquidator ("Liquidator") of P.I.E. Mutual Insurance Company, and against appellant in the amount of $92,359.77. For the reasons that follow, we reverse.
 {¶ 2} On December 10, 1997, Harold T. Duryee, then Superintendent of Insurance of the Ohio Department of Insurance, filed a complaint for rehabilitation of P.I.E. Mutual Insurance Company ("P.I.E."). On February 4, 1998, Duryee filed a motion for an order of liquidation and appointment of liquidator. On March 23, 1998, the trial court entered an order of liquidation and appointment of liquidator. On December 8, 1999, the Liquidator filed a complaint against appellant seeking to recover certain alleged preferential transfers received by appellant from P.I.E. After the filing of the complaint, it was determined that the amount the Liquidator sought to recover was $92,359.77 in payments received by appellant during the preference period of December 10, 1996 until December 10, 1997. The payments were for printing and direct mail services, postage, and sales tax. Each payment was made by P.I.E. in full within 21 days of P.I.E.'s receipt of the invoice.
 {¶ 3} The parties each filed motions for summary judgment and memoranda contra. The trial court reasoned that due to the timing of the provision of the goods and services and payment for them, P.I.E.'s payments to appellant were made for or on account of antecedent debt and were therefore, preferential. The trial court then concluded that unlike federal bankruptcy law, the Ohio Liquidation Act did not contemplate a "current expense" rule for trade creditors or an "ordinary course of business" exception for payments made in the ordinary course of business during the preference period. Therefore, on September 5, 2002, the trial court entered a decision granting judgment in favor of the Liquidator for $92,359.77.
 {¶ 4} On December 4, 2002, the trial court entered a final appealable order and appellant filed a timely notice of appeal, assigning as error the following:
I. The trial court erred as a matter of law when it held that PIE's payments were made on account of an antecedent debt since the payments were in exchange for current, equivalent value.
II. The trial court erred as a matter of law when it held that the payments made by PIE were on account of an antecedent debt since that holding conflicts with other provisions of Ohio Liquidation Act.
III. The trial court erred as a matter of law when it held that payments made by PIE were on account of an antecedent debt where payments were made within twenty-one (21) days of new consideration are not on account of new consideration.
IV. The trial court erred as a matter of law when it held that PIE's payments were for or on account of an antecedent debt and thus voidable because this interpretation is contrary to the express purpose of the Liquidation Act.
 {¶ 5} Appellant's assignments of error are interrelated and will be addressed together. An appellate court's review of summary judgment is conducted under a de novo standard. Covington v. Univ. Hosp. ofCleveland, 149 Ohio App.3d 479, 482, 2002-Ohio-4761. Here, because no disputed factual issues exist, we review only the trial court's application of the law to the undisputed facts.
 {¶ 6} The Ohio Liquidation Act's preference statute, R.C. 3903.28(A), provides, in pertinent part:
(A)(1) A preference is a transfer of any of the property of an insurer to or for the benefit of a creditor, for or on account of an antecedent debt, made or suffered by the insurer within one year before the filing of a successful complaint for liquidation under sections 3903.01 to 3903.59
of the Revised Code, the effect of which transfer may be to enable the creditor to obtain a greater percentage of his debt than another creditor of the same class would receive. If a liquidation order is entered while the insurer is already subject to a rehabilitation order, then such transfer shall be deemed preferences if made or suffered within one year before the filing of the successful complaint for rehabilitation, or within two years before the filing of the successful complaint for liquidation, whichever time is shorter.
 {¶ 7} In other words, R.C. 3903.28(A) permits the Liquidator to void preferential transfers made within one year before the filing of a successful complaint for liquidation or, if the liquidation order is entered while the insurer is already subject to a rehabilitation order, then transfers are deemed preferential if made within one year of the successful filing of the complaint for rehabilitation. The Liquidator's power to void transfers is limited to transfers made for or on account of antecedent debt.
 {¶ 8} The term antecedent debt is not defined in the Ohio Liquidation Act, and the parties dispute whether the transfers at issue in this case were for antecedent debt. The question on appeal then, is whether the trial court erred in ruling that all payments made by an insolvent insurance company after appellant provided goods and services within one year of the time the company was placed into rehabilitation are voidable preferences pursuant to R.C. 3903.28. In order to answer that question, we must determine whether the current expense rule, which was a judicially created exception under the Bankruptcy Act of 1898, or the ordinary course of business exception, which is codified in the current Bankruptcy Code, apply to actions under Ohio's Liquidation Act. The Ohio Liquidation Act was modeled after the Federal Bankruptcy Act of 1898 and, accordingly, this court looks to federal bankruptcy law as an aid to interpreting the Ohio statutes. Covington, at 483.
 {¶ 9} The preference provision in the earlier Bankruptcy Act did not specifically include an exception for payments made in the ordinary course of business. The courts had, however, developed what is called the "current expense" rule to cover situations in which a debtor's payments on the eve of bankruptcy did not diminish the net estate because tangible assets were obtained in exchange for the payment. See, e.g., Marshall v.Florida Natl. Bank of Jacksonville (C.A. 5, 1940), 112 F.2d 380, 382. Without such an exception, trade creditors and other suppliers of necessary goods and services might have been reluctant to extend even short-term credit and might have required advance payment instead, thus making it difficult for many companies in temporary distress to have remained in business. Union Bank v. Wolas (1991), 502 U.S. 151, 158-159,112 S.Ct. 527, 532. Under this doctrine, courts often allowed an exception for regular business expenses based on the notion that current expenses were not antecedent debts, were therefore, not preferential, and did not detract from the general policy of the preference section to discourage unusual action by the debtor or his creditors during the debtor's slide into bankruptcy. See In re Peninsula Roofing SheetMetal, Inc. (Bankr.Ct. Mich. 1981), 9 B.R. 257, 261-262; Matter ofEmerald Oil Co. (C.A. 5, 1983), 695 F.2d 833, 836.
 {¶ 10} The 1898 federal bankruptcy statutes were reformed in 1978. At that time, Congress codified the current expense doctrine by enacting Section 547(c)(2), Title 11, U.S. Code, the "ordinary course of business" provision, which provides, in pertinent part:
(c) The trustee may not avoid under this section a transfer —
* * *
(2) to the extent that such transfer was —
(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(C) made according to ordinary business terms[.]
 {¶ 8} The underlying rationale of Section 547(c)(2), Title 11, U.S. Code of the current bankruptcy code appears to be the same as the "current expense" rule under former law: "no diminution of the estate, payment not for antecedent debt, and allowing the debtor to stay in business." Barash v. Public Finance Corp. (C.A. 7, 1981), 658 F.2d 504,510-511; In re Acme-Dunham, Inc. (D.C.Me, 1985), 50 B.R. 734, 740. The United States Supreme Court has noted that the ordinary course of business exception to the preference section may benefit all creditors by deterring the "race to the courthouse" and enabling struggling debtors to stay in business. Union Bank, at 161. Thus, from both a policy perspective and ordinary principles of bankruptcy law, the current expense rule and the ordinary course of business exception are well-established exceptions to the ability of the trustee to recover preferential transfers.
 {¶ 9} While these exceptions from bankruptcy law are clearly relevant to the facts of the instant case, we must address whether the Ohio Liquidation Act contemplates a similar exception. As noted above, the Ohio Liquidation statutes were modeled after the Bankruptcy Act of 1898 in conjunction with the National Association of Insurance Commissioners. Although there are many similarities to the bankruptcy statutes, the Ohio Liquidation Act broadened the scope of preference law, in particular, by expanding the length of the preference period. According to commentary contained in Wisconsin's statutes, which were predecessors to Ohio law, the reason for the extended reach of the provisions was due to the special nature of insurance, the high probability of sharp practices in the last days of an ailing insurer, and the fact that an insurance company is enough akin to a public utility that favoritism, even by a sound insurer, seems improper. Wisconsin Laws of 1967, S.B. No. 303, Section 645.54, comment on paragraph (b), at 101. The trial court noted that the Ohio legislature enacted Ohio's Liquidation Act after the establishment of the current expense doctrine and after the enactment of the current bankruptcy code, which contains the ordinary course of business exception. The trial court concluded that the omission of any such exception from the Ohio Liquidation Act was therefore intentional and intended to further the policy of protecting policyholders by increasing the likelihood of payment of their claims despite the insurer's insolvency.
 {¶ 10} While protection of insureds, claimants, creditors, and the public generally is part of the purpose of the Ohio Liquidation Act, we note there are equally strong policy considerations to rehabilitate ailing insurers, and that effective rehabilitation allows the insurer to remain in business and thereby serve the interests of policyholders, claimants, creditors, and the general public. R.C. 3903.02(D). If all payments in the regular course of business were voidable, ordinary vendors and trade creditors such as appellant would be loathe to do business with insurers. Such a policy is not in furtherance of the goals of the Liquidation Act.
 {¶ 11} Moreover, in construing the actual language of the Ohio statute, the term "antecedent debt" is nowhere defined. However, at the time Ohio enacted its legislation, transactions conducted in the ordinary course of business or that were for current expenses were not considered antecedent debt. In conformance with the principle of statutory construction contained in R.C. 1.42 that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly," we conclude that R.C. 3903.28 contains an ordinary course of business exception because it is necessary to give effect to the term "antecedent debt." To hold otherwise would render the term "antecedent debt" superfluous and result in the Liquidator having the power to void all transfers made for or on account of any debt. We do not believe this was the intent of the legislature and, accordingly, find appellant's arguments to be well-taken.
 {¶ 12} Based on the foregoing, appellant's assignments of error are sustained, the judgment of the trial court is reversed, and the matter is remanded for further proceedings in accordance with this opinion.
Judgment reversed and remanded.
PETREE, P.J., and DESHLER, J., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] Ann H. Womer Benjamin, Superintendent of the Ohio Department of Insurance and successor to J. Lee Covington, II, is the current Liquidator of P.I.E.