OPINION
{¶ 1} Defendant-appellant, Airborne Express, Inc. ("Airborne"), appeals from a judgment of the Franklin County Court of Common Pleas awarding $85,875.31 to plaintiffappellee, Ann H. Womer Benjamin, successor to J. Lee Covington II, in her capacity as liquidator ("Liquidator") of American Chambers Life Insurance Company ("ACLIC"), a former life, accident and health insurance company in Ohio. Airborne assigns a single error:
The Trial Court erred in granting Plaintiff's Motion for Summary Judgment and denying Defendant's Motion for Summary Judgment regarding the proper interpretation of R.C. 3903.28, the preference provision of Ohio's Insurer Liquidation, and Rehabilitation Act.
Because the trial court did not err in interpreting and applying R.C. 3903.28(I) as written, we affirm.
 {¶ 2} The material facts in this case are not disputed. From March 11, 1999 to April 6, 2000, Airborne on credit provided ACLIC with airfreight services valued at $106,328.10. In exchange for the services, ACLIC remitted payments to Airborne totaling $97,158.99 between March 13, 1999 and March 13, 2000. ACLIC failed to remit payment to Airborne for $4,231.97 invoiced before March 13, 2000 and for an additional $7,051.71 invoiced after that date, which together totaled $11,283.31 in debt outstanding.
 {¶ 3} Because ACLIC's financial condition deteriorated in 1998 and 1999, plaintiff's predecessor, as Superintendent of Insurance of the Ohio Department of Insurance, filed a complaint on March 13, 2000 to place the insurer in rehabilitation pursuant to R.C. 3903.13. On May 8, 2000, the trial court issued an order appointing the Superintendent to act as Liquidator and take possession of all of ACLIC's assets and property, and then liquidate and distribute those assets to ACLIC's creditors in accordance with the priorities established by the Ohio Insurers Supervision, Rehabilitation, and Liquidation Act, R.C. 3903.01 et seq. (the "Liquidation Act"), as then in effect. Subsequent amendments to the act by 2004 H 282, effective July 11, 2004, are not applicable here.
 {¶ 4} On May 3, 2002, the Liquidator filed a complaint against Airborne, and subsequently moved for summary judgment, seeking the return of the $97,158.99 Airborne received from ACLIC between March 13, 1999 and March 13, 2000 ("the preference period"). The Liquidator alleged the insurer had been insolvent since March 13, 1999 and that the payments Airborne received while the insurer was insolvent were preferential transfers that the Liquidator could void and reclaim for the insurer's liquidation estate pursuant to R.C. 3903.28, Ohio's preference statute. See R.C. 3903.28(A). The Liquidator claimed that Airborne is a general creditor entitled to a Class 5 priority under R.C. 3903.42, and that due to the number of claims submitted against the insurer's liquidation estate, it is highly unlikely that Class 5 claimants will receive any payments.
 {¶ 5} Airborne does not contest the Liquidator's claim that the $97,158.99 constituted preferences, as defined in R.C.3903.28(A)(1):
A preference is a transfer of any of the property of an insurer to or for the benefit of a creditor, for or on account of an antecedent debt, made or suffered by the insurer within one year before the filing of a successful complaint for liquidation under sections 3903.01 to 3903.59 of the Revised Code, the effect of which transfer may be to enable the creditor to obtain a greater percentage of his debt than another creditor of the same class would receive. If a liquidation order is entered while the insurer is already subject to a rehabilitation order, then such transfer shall be deemed preferences if made or suffered within one year before the filing of the successful complaint for rehabilitation, or within two years before the filing of the successful complaint for liquidation, whichever time is shorter.
 {¶ 6} Rather, Airborne asserted as a defense that it was entitled to a setoff of the preferences pursuant to R.C.3903.28(I), which allowed a creditor that has received a preferential payment and has then extended unsecured credit to an insurer to use the "amount of the new credit remaining unpaid at the time of the complaint" as a setoff against the otherwise recoverable preference. Airborne argued that R.C. 3903.38(I)'s literal requirement that the new credit "remain unpaid" in order to offset a preference which would otherwise be recoverable results in an inequitable penalty for running account creditors, such as Airborne, that extend and re-extend credit following repayments of debts. Airborne accordingly urged the trial court to look to federal bankruptcy law to aid the court in interpreting and applying R.C. 3903.28(I), and it contended it would have no preference liability if R.C. 3903.28(I) were so interpreted.
 {¶ 7} In its decision issued June 10, 2003, the trial court found that R.C. 3903.28(I) is clear and unambiguous and need only be applied as written without looking to federal bankruptcy law. Applying the statute as written, the court found that Airborne is entitled to a preference setoff of $4,231.97, representing the net amount of Airborne's invoices remaining unpaid by ACLIC as of March 13, 2000, the date the rehabilitation complaint was filed. The court additionally determined that Airborne is not entitled to set off $7,051.71 it invoiced after the preference period closed on March 13, 2000. The court granted summary judgment to the Liquidator and denied summary judgment to Airborne.
 {¶ 8} On June 26, 2003, the trial court entered an agreed judgment of $85,875.31 in favor of the Liquidator based on the parties' stipulation that allowed Airborne a setoff of $11,283.31, the insurer's total debt outstanding, against the Liquidator's $97,158.99 preference claim. In exchange, Airborne agreed not to pursue an administrative claim against the liquidation estate. This appeal followed.
 {¶ 9} At issue in this appeal is the amount that R.C.3903.28(I) allows a creditor to set off against a claimed preference. At the time of the trial court's proceedings, the statute provided:
(I) If a creditor has been preferred, and afterward in good faith gives the insurer further credit without security of any kind, for property which becomes a part of the insurer's estate,the amount of the new credit remaining unpaid at the time of thecomplaint may be set off against the preference which would otherwise be recoverable from him.
(Emphasis added.)
 {¶ 10} Airborne claims that a strictly literal application of R.C. 3903.28(I), as the trial court employed, results in an inequitable penalty being imposed upon Airborne. Such an interpretation requires that Airborne surrender at least $85,871.31 to the insurer's liquidation estate under the June 26, 2003 judgment, even though, Airborne contends, it ultimately enriched rather than depleted the value of the insurer's liquidation estate by providing airfreight services to ACLIC on credit that had a total value exceeding the payments Airborne received for the services.
 {¶ 11} Airborne argues that when R.C. 3903.28(I) is interpreted in light of federal bankruptcy law, the statute entitles Airborne, as a running account creditor, to set off all the new credit, or value, Airborne provided to the insurer, including that for which Airborne received payment, against the preference payments the Liquidator claimed. Accordingly, Airborne asserts, it has no preference liability because the total value of the services Airborne provided on credit ($106,328.10) exceeds the total payments Airborne received from the insurer as a preference ($97,158.99). Airborne requests this court to reverse the trial court's decision to grant summary judgment to the Liquidator and order instead that summary judgment be entered in favor of Airborne.
 {¶ 12} An appellate court's review of summary judgment is conducted under a de novo standard. Covington v. Univ. Hospitalsof Cleveland, 149 Ohio App.3d 479, 482, 2002-Ohio-4761, ¶ 9. Here, because no disputed factual issues exist, we review only the trial court's application of the law to the undisputed facts.
 {¶ 13} Resolution of this appeal centers on R.C. 3903.28(I)'s construction. In construing a statute, our primary concern is the legislative intent in enacting the statute. State ex rel.Auglaize Mercer Community Action Comm., Inc. v. Ohio Civ. RightsComm. (1995), 73 Ohio St.3d 723, 726. To determine the legislative intent, we look to the language of the statute itself. Columbus City School Dist. Bd. of Edn. v. Wilkins,101 Ohio St.3d 112, 2004-Ohio-296, ¶ 26. If a review of the statute conveys a meaning that is clear, unequivocal, and definite, the statute must be applied as written and the court need look no further. Wilkins, supra; Golden Christian Academy v. Zelman
(2001), 144 Ohio App.3d 513, 520, appeal not allowed,93 Ohio St.3d 1473. "[C]ourts do not have authority to ignore the plain language of a statute under the guise of statutory interpretation or liberal or narrow construction." State ex rel. Massie v.Gahanna-Jefferson Pub. Schools. Bd. of Edn. (1996),76 Ohio St.3d 584, 588. Rather, we must give effect to the words used in the statute, and not delete words that are used or insert words that are not used. Campbell v. Burton (2001),92 Ohio St.3d 336, 341. The literal language of a statute must be enforced whenever possible. Cablevision of the Midwest v. Gross (1994),70 Ohio St.3d 541, 544.
 {¶ 14} The plain language of R.C. 3903.28(I) unequivocally states that if the creditor receives a preference and then provides new credit to the insurer, the creditor is entitled to set off its preference liability only by "the amount of new credit remaining unpaid at the time of the complaint."
 {¶ 15} Airborne argues that "the amount of new credit remaining unpaid" embraces all new value, including services provided on credit, to the insurer regardless of whether the insurer remitted payment for the value it received. In other words, Airborne suggests this court should interpret "credit remaining unpaid" as including credit that did not remain unpaid but in fact has been paid. The clear and unequivocal language of the statute, however, provides that the creditor may offset its preference liability only by the amount of new credit "remaining unpaid." "Remaining unpaid" is unambiguous, having a meaning of "not yet paid" or "debt outstanding." The American Heritage Dictionary of the American Language (4th Ed., 2000); Webster's Revised Unabridged Dictionary (1998). We decline to construe "credit remaining unpaid" as including credit that has been paid.
 {¶ 16} Further, in requesting that amounts it invoiced ACLIC after the complaint be included as a setoff, Airborne asks this court to ignore the statute's language limiting the setoff to the amount of new credit remaining unpaid "at the time of the complaint." In this matter, we are guided by the rule that all words in a statute should be given effect and no part should be ignored or disregarded. R.C. 147(B); D.A.B.E., Inc. v.Toledo-Lucas Cty. Bd. of Health, 96 Ohio St.3d 250,2002-Ohio-4172, ¶ 19. Thus giving effect to the phrase "at the time of the complaint," we conclude that although R.C. 3903.28(I) does not explicitly state that the phrase means "at the time of the [filing of the] complaint," the meaning is clear when the statutory provision is construed with other sections of R.C. Chapter 3903, which clarify the relevant "time" is the "filing" of the rehabilitation or liquidation complaint. See, e.g., R.C.3903.28(A)(1). Accordingly, pursuant to R.C. 3903.28(I), only the amount of credit that remained unpaid, or the debt outstanding, as of the filing of the rehabilitation or liquidation complaint is included as a setoff against the creditor's preference liability. In this case, the trial court was correct in finding that Airborne's setoff under R.C. 3903.28(I) is limited to $4,231.97.
 {¶ 17} Arguing that the strict application of R.C. 3903.28(I) as written has a harsh and unfair result, Airborne urges this court to use federal bankruptcy law as an aid in interpreting the Liquidation Act, as this court has done in Univ. Hospitals ofCleveland, ¶ 10, and Covington v. HKM Direct MarketCommunications, Inc., Franklin App. No. 03AP-52, 2003-Ohio-6306, appeal not allowed (2004), 102 Ohio St.3d 1411. The decisions of this court, however, are factually and legally distinguishable from the instant case, and federal bankruptcy law need not be utilized here to interpret R.C. 3903.28(I).
 {¶ 18} In Univ. Hospitals of Cleveland, this court considered the interplay between R.C. 3903.28 and 3903.30, and whether R.C. 3903.30's general setoff section or the preference section's own setoff subsection, R.C. 3903.28(I), should govern setoffs against preferences. To resolve the tension and inconsistency between the statutory provisions in a way that gives effect to both sections of the statute, this court looked to federal bankruptcy law for guidance. Id. at ¶ 10. Similarly, this court looked to analogous federal bankruptcy law to determine the meaning of "property" as used in the statute because "property" is not defined in R.C. Chapter 3903, and its meaning was at issue in the case. Id. at ¶ 20.
 {¶ 19} In HKM Direct Market Communications, the parties disputed whether transfers between the insurer and creditor were for "antecedent debt," and thus recoverable by the Liquidator under R.C. 3903.28(A). Because "antecedent debt" is not defined in Ohio's Liquidation Act, this court concluded that to answer the question it must determine (1) whether federal bankruptcy law's "current expense" rule and "ordinary course of business" exception apply to actions under Ohio's Liquidation Act, and (2) whether R.C. 3903.28 necessarily and implicitly contains the "ordinary course of business" exception to give effect to the term "antecedent debt." The "current expense" rule was a judicially created exception under the Bankruptcy Act of 1898 (the "Bankruptcy Act"); the "ordinary course of business" exception is codified at Section 547(c)(2) of the Bankruptcy Reform Act of 1978 (the "Bankruptcy Code"), Title 11, U.S.Code.HKM Direct Market Communications, ¶ 8.
 {¶ 20} Here, in contrast with Univ. Hospitals of Cleveland,
the sole statutory provision to be construed is R.C. 3903.28(I) and, more particularly, its phrase "the amount of new credit remaining unpaid at the time of the complaint." Neither party suggests that R.C. 3903.30 applies here, as did the defendants inUniv. Hospitals of Cleveland. Nor does Airborne contend the phrase at issue here, or any of its words, is unclear, ambiguous, or indefinite, as was claimed in Univ. Hospitals of Cleveland
and HKM Direct Market Communications. Specifically, Airborne has not argued that the airfreight services it provided to ACLIC did not constitute "property" which becomes a part of the insurer's estate under R.C. 3903.28(I), as the preference defendant claimed in Univ. Hospitals of Cleveland. Neither has Airborne argued it did not have to surrender the claimed preferential payments because they were not for "antecedent debt" as was asserted in HKM Direct Market Communications. Instead, Airborne contends only that the language of the statute is harsh and inequitable when applied strictly and therefore should be construed differently. To the extent that Airborne argues here, for the first time, that the payments it received from ACLIC are unrecoverable because they fall within the "ordinary course of business" exception, recognized by this court in HKM DirectMarket Communications, ¶ 11, the argument is waived because it was not raised in the trial court.
 {¶ 21} Because the issue before the court here is significantly different from the issues before this court inUniv. Hospitals of Cleveland and HKM Direct MarketCommunications, and because the statutory language at issue in this case is clear, unambiguous and definite, we conclude federal bankruptcy law need not be used to aid in our interpretation and application of R.C. 3903.28(I). Nonetheless, even if we were to look to federal bankruptcy law for guidance in interpreting R.C.3903.28(I), Airborne still would not prevail.
 {¶ 22} Airborne asserts that, as in this case where an allegedly inequitable penalty is imposed upon running account creditors under a strict application of R.C. 3903.28(I), federal courts perceived an inequity resulting to running account creditors when a virtually identical provision, Section 60c of the 1898 Bankruptcy Act, was strictly applied. To remedy the inequity, Airborne continues, federal courts developed the "net result rule," also referred to as the "running account rule," which allowed a creditor to add up all the credit, or value, it transferred to the debtor and then balance that amount against the sum of the payments it received from the debtor; if the credits exceeded the payments, as in the instant case, the creditor did not have to surrender any payments claimed as preferences. Airborne contends the "net result rule" evolved into and became simultaneous with the "subsequent advance rule," codified in Section 547(c)(4) of the Bankruptcy Code.
 {¶ 23} Cases that Airborne relies upon for its proposition that the net result rule is widely recognized in federal bankruptcy law examined the 1898 Bankruptcy Act as it existed prior to its amendment in 1903. See Jaquith v. Alden (1903),189 U.S. 78, 23 S.Ct. 649; Yaple v. Dahl-Millikan Grocery Co.
(1904), 193 U.S. 526, 24 S.Ct. 552; Joseph Wild Co. v.Provident Life Trust Co. (1909), 214 U.S. 292, 29 S.Ct. 619;Kimball v. E.A. Rosenham Co. (C.A.8, 1902), 114 F. 85.
 {¶ 24} Contrary to Airborne's contentions, the vast majority of courts have held the "net result" rule is no longer viable by virtue of amendments to the 1898 Bankruptcy Act. See In reThomas Garland, Inc. (E.D. Mo. 1982), 19 B.R. 920, 925-926
(providing an excellent summary on the historical development of the net result rule); In re Frigitemp Corp. (C.A.2, 1985),753 F.2d 230, 233, and cases cited therein (stating that every court that has considered this question has ruled that the net result rule, therein referred to as the running account rule, did not survive the 1903 amendments to the 1898 Bankruptcy Act that rectified perceived inequities in the act, and it has not been available as a valid defense since that time); In re WadsworthBldg. Components, Inc. (C.A.9, 1983), 711 F.2d 122, 124
(concluding that the net result rule did not survive enactment of the 1978 Bankruptcy Code); In re Swallen's, Inc. (S.D.Ohio 2000), 266 B.R. 807, 815 (concluding the net result rule is no longer available as a defense). See, also, Countryman, The Concept of a Voidable Preference in Bankruptcy (1985, 38 Vand. L. Rev. 713, 783 (finding that the rule was applicable to old Section 57g, not old section 60c of the 1898 Bankruptcy Act, and that "no `net result' rule has existed since 1903").
 {¶ 25} Airborne relies on Farmers Bank of Clinton, Missouriv. Julian (C.A.8, 1967), 383 F.2d 314, certiorari denied,389 U.S. 1021, 88 S.Ct. 593, but it is an anomaly. To support its decision that the "net result" rule remains viable, the court relied on two cases decided under the Bankruptcy Act as it existed prior to the 1903 amendment, and two other cases that did not involve the "net result" rule. Id. at 328. We decline to follow Farmers Bank.
 {¶ 26} Airborne nevertheless contends that in enacting the Bankruptcy Code, Congress intended the net result rule to remain viable. Airborne points to legislative notes pertaining to Congress' enactment of Section 547(c)(4) that purport to evidence its intent to incorporate the net result rule:
[Section 547(c)(4)] codifies the net result rule in section 60c of current law [section 96(c) of former Title 11]. If the creditor and the debtor have more than one exchange during the [preference] period, the exchanges are netted out according tothe formula in paragraph (4). Any new value that the creditor advances must be unsecured in order for it to qualify under this exception.
(Emphasis added.)
 {¶ 27} Airborne acknowledges that Section 547(c)(4) of the Bankruptcy Code is the exclusive, current embodiment, if any, of the net result rule. However, there are key differences between the old net result rule and Section 547(c)(4). Under the net result rule, which was a judicially created rule to remedy inequities in the 1898 Bankruptcy Act, all transactions between the creditor and debtor during the preference period were netted out, "irrespective of whether the value furnished by the creditor to the debtor [was] advanced either before or after the transfer from the debtor to the creditor"; the bankruptcy trustee was entitled to claim as a preference only the net amount by which the debtor's payments exceeded the credits, or value, advanced by the creditor. In re Fulghum Constr. Corp. (C.A.6, 1983),706 F.2d 171, 173. If the credits exceeded the payments, the trustee could recover nothing for the liquidation estate.
 {¶ 28} In contrast, "the formula in paragraph (4)," or the statutory language of Section 547(c)(4), "contains explicit timing requirements absent from the `net result' rule." In reLadera Heights Comm. Hosp., Inc. (1993), 152 B.R. 964, 967. Section 547(c)(4) requires that the creditor's transfer of new value to the debtor be made after a preferential payment by the debtor in order for the creditor to claim the amount of the new value as an offset. Additionally, unlike the old net result rule, Section 547(c)(4) also requires that the new value the creditor claimed as an offset has not been paid, or that payment made for the new value is itself voidable. Section 547(c)(4); In reParkview Hosp. (N.D.Ohio 1997), 213 B.R. 509, 513, affirmed (1999), 181 F.3d. 183. These material differences belie any suggestion that Section 547(c)(4) directly codified the old net result rule. At best, "only the spirit of the `net result' rule survived the enactment of the Bankruptcy Code." In re Ladera,
supra, citing In re Thomas W. Garland, Inc., supra. See, also,In re Wadsworth Bldg. Components, at 124; In re Fulghum, at 173; In re Ford (Vt. 1989), 98 B.R. 669, 678.
 {¶ 29} Therefore, under the analogous current federal bankruptcy rule, the only amounts that a creditor can claim as a setoff are (1) transfers of new value to a debtor that occur subsequent to a preferential payment where (2) the debtor has not paid for the new value it received, or the debtor has paid for the new value it received but the payment is voidable. Accordingly, even if R.C. 3903.28(I) were interpreted in light of federal bankruptcy law currently in effect, Airborne would be limited to a setoff of not more than $11,283.31, the total debt outstanding. The setoff would be further limited to $4,231.97, as the trial court determined, if effect were given to R.C.3903.28(I)'s requirement limiting the setoff to the amount "remaining unpaid at the time of the complaint." We therefore conclude that even if federal bankruptcy law was utilized as an aid in construing R.C. 3903.28(I), Airborne would not prevail.
 {¶ 30} Finally, we consider whether equitable considerations should be judicially engrafted upon R.C. 3903.28(I) in this case. The primary purpose of Ohio's Liquidation Act "is the protection of the interests of insureds, claimants, creditors, and the public generally[.]" R.C. 3903.02(D). A strong policy consideration is the encouragement of creditors to continue dealing with an ailing insurer so that, through successful rehabilitation, the insurer will remain in business. Id.; HKMDirect Market Communications, at ¶ 10. Nevertheless, if liquidation of the insurer cannot be prevented through successful rehabilitation, the Liquidation Act sets forth the General Assembly's intent as to how unavoidable losses are to be equitably apportioned. R.C. 3903.02(D)(3)(4).
 {¶ 31} A fundamental "purpose of the preference section is to require preferred creditors to return preferential payments to the liquidation estate so that all creditors in the same class
may be treated equally and equitably." (Emphasis added.) Univ.Hospitals of Cleveland., at ¶ 14. See, also, Begier v. I.R.S.
(1990), 496 U.S. 53, 58, 110 S.Ct. 2258, 2262-2263; Swallen's,
at 815. The General Assembly has clearly stated its intent with regard to what the Liquidator may recover as a preference, as well as the extent of equitable consideration to be given creditors to defend against the liquidator's recovery of preferences, as expressly set forth in R.C. 3903.28.
 {¶ 32} The General Assembly has also expressed its intent regarding the priority to be accorded various classes of claimants with regard to the distribution of claims from the insurer's estate, with claims in each class to be paid in full before payment is made to the next class. R.C. 3903.42. The General Assembly has determined that claims of general creditors, such as Airborne, who are accorded Class 5 priority, will receive payment from the insurer's estate only after claimants having a higher priority have been paid in full, such as policyholders, the federal government, and employees. Because the General Assembly has clearly expressed its intent regarding the equitable considerations that are to be given claimants under Ohio's liquidation act, we must give effect to that intent by applying the statutes as written.
 {¶ 33} Based on the foregoing, we hold that R.C. 3903.28(I)'s plain language unequivocally permits a preference creditor to set off only "the amount of new credit remaining unpaid at the time of the complaint." The trial court did not err in applying the statute as written and determining, in its June 10, 2003 decision, that R.C. 3903.28(I) entitles Airborne to a setoff of $4,231.97 against its $97,158.99 preference liability, where $4,231.97 is the net amount of Airborne's invoices to ACLIC for airfreight services provided on credit that remained unpaid as of March 13, 2000, the date the rehabilitation complaint was filed.
 {¶ 34} Notwithstanding the trial court's correct determination that Airborne is entitled to a $4,231.97 setoff pursuant to R.C. 3903.28(I), the June 26, 2003 agreed judgment entry increased the setoff amount to $11,283.31, the total debt outstanding, based on the parties' stipulation to increase the setoff amount in exchange for Airborne's waiver of an administrative claim. Because the record does not reflect that the agreement increasing the setoff amount was conditioned upon the outcome of an appeal to this court, we enforce the parties' stipulation and affirm the trial court's judgment allowing Airborne a setoff of $11,283.31, rather than $4,231.97, against the total preference claim of $97,158.99, and ordering the Liquidator to recover $85,875.31 from Airborne. Having overruled Airborne's single assignment of error, we affirm the trial court's judgment.
Judgment affirmed.
Bowman and Klatt, JJ., concur.